ALBANY,
February, 1809.

Fenton
v.
Reed.

An actual marriage may be inferred, in ordinary cases, from cohabitation, acknowledgment of the parties, &c. No formal solemnization of marriage is requisite. A contract of marriage made *per verba de presenti*, is as valid, as if made *in facie ecclesiæ*.

FENTON *against* REED.

THIS case came before the court, on a *certiorari*, from the justices' court in *New-York*.

It appeared, upon the trial below, that *Reed*, the plaintiff below, demanded a certain annual payment of 25 dollars, secured by the constitution of the Provident Society to the widows of deceased members of that society. *William Reed*, whose widow the plaintiff below claimed to be, was a regular member of the society, at the time of his decease. By the constitution of the society, the widows of regular members were entitled to 25 dollars, annually, from the funds thereof. The only point in controversy was, whether the plaintiff was the widow of *Reed*. In the year 1785, she was the lawful wife of *John Guest*. Some time in that year, *Guest* left the state for foreign parts, and continued absent, until some time in the year 1792, and it was reported, and generally believed, that he had died in foreign parts. The plaintiff, in 1792, married *Reed*. In that year, and subsequent to the marriage, *Guest* returned to this state, and continued to reside therein, until *June*, 1800, when he died. He did not object to the connection between the plaintiff and *Reed*, and said that he had no claim upon her, and never interfered to disturb the harmony between them. After the death of *Guest*, the plaintiff continued to cohabit with *Reed* until his death in *September*, 1806, and sustained a good reputation in society; but no solemnization of marriage was proved to have taken place between the plaintiff and *Reed*, subsequent to the death of *Guest*.

Upon these facts, the court below decided, that the marriage with *Reed* was not meretricious or void, and that the plaintiff was entitled to the annuity.

The plaintiff in error contended, that the statute concerning *bigamy* only purged the felony, and did not legalize the marriage with *Reed*, which, after the return of *Guest*, was

meretricious; that though the subsequent cohabitation with Reed, as his wife, after Guest's death, was sufficient to charge him with her debts, as her husband; yet that, when the wife comes and claims a right, quasi wife or widow, she must prove a marriage in fact, and that the continuance of cohabitation was not sufficient.

The defendant in error insisted, that the statute concerning bigamy, frees her from guilt, and that her subsequent cohabitation with Reed was not meretricious.

On the facts and the points above stated, the case was submitted to the court, without argument.

Per Curiam. The marriage of the plaintiff below with William Reed during the life-time of her husband John Guest, was null and void. It was of no legal avail whatever, and not sufficient to constitute them husband and wife de facto. This has been the uniform and well-settled rule of the common law. (1 Roll. Abr. 340. pl. 2. 357. pl. 40. 360. F. Cro. Eliz. 858. 1 Salk. 120.) The statute concerning bigamy does not render the second marriage legal, notwithstanding the former husband or wife may have been absent above five years, and not heard of. It only declares, that the party who marries again, in consequence of such absence of the former partner, shall be exempted from the operation of the statute, and leaves the question on the validity of the second marriage just where it found it. Elizabeth Reed was then the lawful wife of Guest, and continued so, until his death in 1800; and the true question is, whether there was evidence sufficient to justify the court below in concluding that she was afterwards married to Reed. Though the court below may have decided upon erroneous grounds, yet if upon the return there appears to be other and sufficient reasons to justify their decision, the judgment ought to be affirmed. It is stated, that there was not proof of any subsequent marriage in fact, and that no solemnization of marriage was shown to have taken place. But proof of an actual marriage was not necessary. Such strict proof is only required in pro-

ALBANY,
February, 1809.

secutions for bigamy, and in actions for criminal conversa-
tion. (4 *Burr.* 2057. *Doug.* 171.) A marriage may be
proved, in other cases, from cohabitation, reputation, ac-
knowledgment of the parties, reception in the family, and
other circumstances from which a marriage may be infer-
red. (4 *Burr.* 2057. 1 *Esp. Cases,* 213. 2 *Bl. Rep.* 877.
*Peake's Cases N. P.* 231.) No formal solemnization of
marriage was requisite. A contract of marriage made *per
verba de presenti* amounts to an actual marriage, and is as
valid as if made *in facie ecclesiæ.* (6 *Mod.* 155. 2 *Salk.* 437.
*Peake's Cases,* 231.) In the present case, there existed strong
circumstances, from which a marriage subsequent to the death
of *Guest* might be presumed. The parties cohabited together
as husband and wife, and under the reputation and under-
standing that they were such, from 1800 to 1806, when
*Reed* died; and the wife, during this time, sustained a good
character in society. A jury would have been warranted,
under the circumstances of this case, to have inferred an
actual marriage, and the court below had sufficient ground
to draw that conclusion; and as they have drawn it, and
their decision being a substitute for a verdict, we will not
disturb it.

Judgment affirmed.