OVERSEERS OF THE POOR OF THE TOWN OF NEWBURY—Ap'lees. <span style="float:right">ORANGE,<br>*February,*<br>1829.</span>
*vs.*
OVERSEERS OF THE POOR OF THE TOWN OF BRUNSWICK—Ap'lnts.

An order for the removal of *N H, a pauper, his family and effects,* from one town to another, is valid as to *N H* only, and will be quashed as to the family.

An agreement to marry made between a man and woman *per verba de presenti,* followed by uninterrupted cohabitation for several years, though not solemnized according to the laws of the place where the contract is made, will be .deemed a valid marriage. In the case in question the cohabitation had continued about eighteen years.

ORANGE,
February,
1829.

Newbury
vs.
Brunswick.

This was an appeal from the order of *Ephraim B. Stevens* and *Charles Hale, Esquires,* Justices of the peace for the County of *Orange,* made upon the complaint of the Overseers of the Poor of the town of *Newbury,* for the removal of "*Nathaniel P. Harriman,* his family and effects," from said *Newbury* to said *Brunswick.*

This cause was entered in the County Court, June term, 1827, at which term the appellants filed a motion to *quash* the order and proceedings of said Justices, for generality with regard to the word *family :* and the County Court decided that said proceedings be *quashed* as to the family. To which decision the appellants excepted ; and the cause was continued to December term, 1828 ; at which time the parties agreed to the following statement of facts, for the purpose of obtaining the judgment of the Supreme Court :

"That previous to the 7th day of September, 1807, *Nathaniel P. Harriman* and *Lydia Page,* being citizens of *Vermont,* went into *Stanstead,* in the Province of *Lower Canada* ; and, on the day last aforesaid, before one *Phinehas Hubbard,* then a Justice of the peace in said Province, covenanted and agreed, each with the other, to be and remain husband and wife. In consequence of there being no clergyman present, authorized by law to solemnize marriages, this method was adopted ; and said Justice made a record of the same, but did not declare said *Nathaniel P.* and *Lydia* husband and wife ; but informed them that he had no legal authority to solemnize marriages.

The said *Nathaniel P.* and *Lydia* have from said 7th day of September, 1807, to the time of said order of removal, cohabited together as husband and wife ; and, if the testimony of said *Lydia* is admissible to that point, it is also agreed that no ceremony of marriage has ever been had between them, other than the one before said Justice *Hubbard.* In June 1808, the said *Harriman* and *Lydia* moved into the town of *Brunswick,* in this State, and continued to reside therein three years next following, without having been warned out ; and have ever since resided in the *United States.* Some time previous to September 8th, 1826, the said *Harriman* and *Lydia,* with their children, to wit, *Polly,* aged 16 years, *Sally,* aged 9 years, *Job,* aged 5 years, and *James,* aged 3 years, came to reside in the town of *Newbury ;* but have never gained a settlement therein. On the said 8th day of September 1826, the said *Lydia* being sick and in need of assistance, and said *Harriman* being destitute of property and unable to support her and the children, the overseers of the poor of *Newbury,* on application of *Harriman,* furnished the said *Lydia* with necessaries, and expended monies for her support, and

ORANGE,
*February,*
1829.

Newbury
*vs.*
Brunswick.

some of the aforesaid children; but none for the personal support of *Harriman.*

It is also agreed, that on the 7th day of September, 1807, the statute of 26th Geo. II. was the only law in force in said Province regulating marriages. On the 22d day of March, 1825, an act of the Provincial Parliament of said Province was passed, which declares all marriages, before that time had or solemnized by any Justice of the peace, good and valid in law, &c.

If the Court are of opinion, from the facts herein set forth, that said town of *Brunswick* are liable, then judgment is to be rendered in favor of said town of *Newbury.* Otherwise, judgment is to be rendered in favor of the said town of *Brunswick.*"

*Cushman* and *Marsh, for defendants.*——According to the latest decisions of this Court there seems to be no use in saying any thing of the family in an order of removal; and when that expression is inserted, is there any propriety in, or effect from, quashing the order as to the family? For it is clear from all the cases in the books, and from our own decisions, and from the reason of the thing, that if an order were made, and remained not appealed from, directing a man and his family to be removed from such town to such a town, it would not determine the settlement of any one, except the man, his wife and children; and no case is to be found where any greater effect was given to such order. And it is equally clear, that if the order be quashed as to the family, or this expression was not originally inserted in the order, yet if the order remove the man only, still it determines the settlement of his wife and children. And this is settled doctrine both here and in *England.* It is believed that all the difficulty which has been made in *England* and here respecting the use of this expression, and quashing the order in part on that account, is worse than useless. We are aware that it has been said, and orders have been quashed, *as to the family,* on that account, that it might affect the settlement of servants, or of children of the wife by a former husband; but still no decided case goes any further than that removing the *man* decides the settlement of his wife and children. And removing the *wife* or *widow* of a man, decides also the residence of the husband and children. The whole sum and substance of the doctrine to be elicited from the decided cases on this subject is, that wherever the husband or father is by the order decided to be settled, there the legally married wife and their children, (that is, the children of the husband,) have derivatively their settlement also. And where the order is for the removal of the woman, and such expressions are used in the order that the

ORANGE,
February,
1829.
―――――――
Newbury
vs.
Brunswick.

Court must suppose that the validity of the marriage came in question, and was adjudicated on, and no appeal is there taken, it determines not only the marriage, but of course the settlement of the husband and children also.   Rex vs. Buckswell, 2 Bott, 74.—Burr. S. C. 168.—Rex vs. Luffington, 2 Bott, 74.—Henly vs. Chesham, 2 Bott, 81.—Rex vs. * * *, 2 Bott, 75.—Burr. S. C. 551.   And the reason is that it is res judicata ; and the question cannot be again inquired into.   But the removal of a man, or a man and his family, decides nothing only the settlement of the man, and those who derive their settlement from him.   And the removal of the wife or widow of such an one does the same, that is, it is supposed to remove the wife or widow of such an one, because she is or was his wife, and, therefore, derives her settlement from him, and, therefore, his settlement and the marriage must have been adjudicated on.   And it alike determines the settlement of his children.   But such a removal determines nothing as to the settlement of their servants, or the children of the wife by a former husband, because, inasmuch as the servant does not derive his settlement from the master, or the child from his father-in-law, the settlement of such does not come in question—nor would it any more, it is believed, if the word family were used in the order.   Nor is it believed that any case can be found where it has been decided, either here or in England, that using this word family in an order would have this effect.

The question intended to be submitted by the parties in this case is, whether marriage in Canada, as it is stated in the case, determines the settlement of the pauper, Lydia Page, (or Harriman,) and her children, as deriving it from Nathaniel P. Harriman, the supposed husband and father ?   And this depends on the validity of the marriage.   If the marriage is void, the woman is yet single, and the children illegitimate : and tho' she may have acquired a settlement in Brunswick, in her own right, by three years residence there, and the children by being born there, yet neither the woman nor children can be affected by the order of removal, not being named in the order otherwise than as the family of Harriman.   The order was made on the ground that Harriman and his family had become chargeable to Newbury. But the case admits that Harriman had not become chargeable, and it is agreed that the woman and children had become chargeable.   The order then must be affirmed or reversed wholly on the ground of the legality or illegality of the marriage ceremony, as stated in the case, which took place in Canada.

It is admitted that the act of parliament of 26 Geo. II. commonly called the marriage act, was in force, and the only law

ORANGE,
February.
1829.

Newbury
vs.
Brunswick.

in force, on this subject, at the time this ceremony took place, and so continued till the year 1826. But it is clear, then, that the marriage was void, not being in conformity to any existing law from the time it took place till 1826. 2 *Bott's Poor laws*, 65, *et seq.*

In the *King* vs. *Luffington* it was decided " that a marriage " contracted previous to the marriage act, if the ceremony was not " performed by a priest in holy orders, and in *facie ecclesiæ*, was " null and void, and no settlement can be gained by the woman " under it." 2 *Bott*, 74.—*Burr. S. C.* 232.—1 *Wils.* 74. In the *King* vs. *Hodnet* it was decided " that a marriage between " two infants by means of a procured license, and without consent " of either parents or guardians, is void by the *Stat.* 26 *Geo. II.* " *c.* 33, altho' both parties are illegitimate, and no settlement can " be gained under it." This is cited to show with how much strictness the marriage act was construed in *England*.

The question must then turn on the validity, or rather the effect of the act of the provincial counsel or parliament of 1826. Whatever may be regarded as the effect of the act in the province, it is certain it can have no effect here. These parties never were citizens or subjects of the province. They were on 7th Sept. 1807, citizens of *Vermont*, went into the province at that time, had this pretended marriage, and came back in the next June after, and have ever since resided in the *United States*. It may be admitted, that if the marriage had been celebrated according to existing laws at the time in the province, it would have been valid here. But it was then void there, and, of course, here till after the children were all born, and until the rights of the parties in this case were settled and vested here according to the laws of this state. And now can the Provincial act of 1826 alter these rights ? Are these children, which were born illegitimate, now the heirs of *N. P. Harriman* ; or rather would they be so in case of his death ? If a large estate were pending on this question, would it be pretended that they could hold as heirs ? Can, in other words, the legislature of the Province determine by a retrospective law the rights of persons or property which were never within their jurisdiction ; but were always citizens of this state ? Marriages celebrated in a foreign country, agreeably to its existing laws, are valid here by virtue of our laws, and not by virtue of the laws of such foreign country. But if a foreign government, by any retrospective act, can make a marriage, now void, valid here, such marriage does not become valid here, by virtue of our own existing laws, but by the legislative act of a foreign government ; in other words, we permit a foreign government to legislate for us.

ORANGE,
*February,*
1829.

Newbury
*vs.*
Brunswick.

*Smith* and *Berry, for the plaintiffs.*—I. It has been long set-tled that an order to remove "*A* and family," though it may be bad and quashed as to family, is good as to *A*, under which he may be removed. 1 *Strange*, 114, *Beaston* vs. *Scisson.* So where an order is made to remove several, and the order is bad as to part, either for some informality, or on the ground that they were not liable to be removed, the order as to them may be quashed, but it will be sustained as to the residue. 2 *Burr. Set. Cas.* 486, *No.* 154, *Rex* vs. *Preston.*—2 *Burr, S. C.* 581.—1 *Burr. S. C.* 147, *No.* 49.—*id.* 177, *No.* 63.—*id.* 202, *No.* 70. —*id.* 113, *No.* 73.

II. The support having been furnished *N. P. Harriman's* family, and the order as to them being quashed, the appellants contend they are not liable.

If the paupers were legally married, and this fact is here assumed, this point will not avail them ; for there is no principle of law better settled than that necessaries for a man's family are necessaries for himself, for which he is personally liable. 1 *Swift's Dig.* 30, 31, 33, 41.—*Con. Rep.* 638.—2 *Kent's Com.* 123. It is on this principle that for necessaries furnished an infant's wife, he is responsible. 1 *Esp.* 161.—1 *Strange,* 168.—*Fonb. Eq.* 73—*Comb,* 320, cited in 3 *Term Rep.* 46. If then *N. P. Harriman* would be liable in the present case for support furnished his wife and children, it follows as a necessary consequence that the appellants are liable.

III. The paupers were never legally married.

From reputation and cohabitation a *prima facie* marriage, at least, is proved ; and if the appellants rely upon the want of a legal marriage, the *onus probandi* is thrown on them, if it is competent for them to go into evidence of this fact. No other testimony is offered to establish this fact, but that of the reputed wife. But,

1. The paupers being husband and wife *de facto*, at all events, and legally such by presumption of law, the validity of the marriage cannot be controverted, especially after long cohabitation. *Burr. S. C.* 508, *No.* 163, *Rex* vs. *Stockland.*

2. The reputed wife ought not to be admitted to disprove her marriage and bastardize her issue.

3. The policy of the law will not suffer the wife to testify to facts which tend in the least degree, even collaterally, to criminate her husband. 2 *Term Rep.* 263.—*Peake's Ev.* 183, *(n. 2.)*— 2 *Kent's Com:* 149.

The direct tendency of the wife's testimony, in the present case, is to render the reputed husband liable to a prosecution for bas-

tardy, which is in its nature a criminal prosecution. *2 Aikins' Rep.* 211. If the policy of the law will not allow the wife to disprove the marriage, the paupers are to be deemed husband and wife ; for though the Court should be of opinion that the marriage at *Stanstead* was not legal, *non constat,* but that a legal marriage may have been had at some other place.

ORANGE,
*February,*
1829.

Newbury
*vs.*
Brunswick.

4. The act of the Provincial Parliament of *Canada,* passed March 22, 1825, legalizes this marriage. The law of marriage is a part of the *jus gentium,* and a marriage, valid by the law of the place where it is made, is valid every where. *2 Kent's Com.* 28.—*Crompton* vs. *Bearcroft, Bull. N. P.* 114.—*2 Haggard,* 443, 444, 428, 433, 412.—16 *Mas. Rep.* 157. The act of 1825 declares " that all marriages heretofore had and solemnized in the District of *St. Francis* by Justices of the Peace, shall be valid in law and binding to all intents and purpóses." Under this provision, should the question arise in *Canada,* the paupers beyond all question would be considered, by the Provincial Courts, as husband and wife. It becomes then the duty of this Court, yielding to that principle of comity which is due from one nation to the laws of another, and to the principles of international law, to hold that this marriage is legalized by the act of 1825. It will not be denied that if the marriage in the present case was legal by the laws of *Canada* at the time it was consummated, it is legal here. It must follow, then, as a necessary incident to this principle, that if the ratifying act of 1825, would render the marriage between these paupers valid, in case they should remove to *Canada,* it is valid here.

No form for the solemnization of marriages is prescribed. If a magistrate, who is authorised to marry, undertakes to act in his official character, that is sufficient, and it is not necessary, in order to render the marriage valid, that he should pronounce them husband and wife. *7 Mass. Rep.* 48. In the present instance the case stated, as well as the magistrate's certificate, shows that he undertook to act in his official capacity, which is all that is requisite.

5. May not the marriage, in the present case, be considered a marriage *per verba de præsenti,* entered into in this state, and consummated here by cohabitation, the evidence of which exists in *Canada ?* A marriage *per verba de præsenti* is binding by the civil and common law ; and such is the law of *Europe* : and such a marriage would be holden valid in this state, as our statute does not declare those marriages void which are not solemnized according to its provisions. *4 Johns. Rep.* 52.—6 *Mod.* 153.—2 *Salk.* 437.—*Peake's Cas.* 231.—2 *Kent's Com.* 75, 76, 77, 78,—*Reeve's Dom. Rel.* 196, 200, 290,—2 *N. Hamp. R.* 268.—3 *Marshall,* 370.

ORANGE,
February,
1829.

Newbury,
vs.
Brunswick.

The opinion of the Court was delivered by

PADDOCK, J.   As it respects the decision of the County Court in quashing so much of the proceedings in this case as relates to the family of *Nathaniel P. Harriman*, the pauper, the Court were correct.   The family ought not to have been named, either in the complaint of the overseers, in the warrant to bring *Harriman* before the Justices, or in the order of removal; and if they were, it was surplusage, and it was well to have it expunged from the record.   But it will be seen, by looking at the 3d section of the statute upon which this prosecution is founded, (p. 370) that the warrant of removal directs the officer " to remove and transport such stranger, with his or her family and effects, (if any he or she have) on the nearest route, to the place of such stranger's legal settlement, &c." and in no other place in the act, is the family spoken of.   It may be remarked, that what is meant in this act by *family*, are those, and those only, for whose support and maintenance the law obliges a person, whether male or female, to provide : so that no procedure under this statute is intended, nor can it have the effect, to divide and break up families ; but on the contrary, the town which is obliged to support and maintain the principal head of the family, be it male or female, is also obliged to provide for those who have their residence with such principal.

This case comes before the Court upon a statement of facts, made up by the parties; which are, briefly, that on the 7th day of Sept. 1807, *Harriman,* and one *Lydia Page*, an unmarried woman, and who is now his reputed wife, went before a Justice of the peace in the Province of *Lower Canada, and there covenanted and agreed, each with the other, to be and remain husband and wife ; of which the Justice then made a record :* from which time up to the commencement of these proceedings, they have cohabited together as man and wife, and have four children, all of which are now under age, and live with them—That in June, 1808, *Harriman* and the said *Lydia* removed from the Province of *Canada* into the town of *Brunswick,* where they remained the three succeeding years, gaining a legal settlement therein. Previous to September, 1826, they found their way to *Newbury,* where they have since resided, but not to gain a settlement.   At that time *Harriman* being destitute of property, and the woman sick, he applied to the overseers of the poor of *Newbury* for assistance, who relieved the necessities of the woman and children. In March, 1825, the Legislative Assembly of the Province of *L. Canada,* passed an act declaring all marriages which had been celebrated in the Province before dissenting ministers from the

ORANGE,
February,
1829.

Newbury
vs.
Brunswick.

Church of *England,* and Justices of the peace, to be legal and valid' in law.

There is but one question in the case to be decided, and that is, whether *Lydia Page,* otherwise *Lydia Harriman,* is the wife of *Nathaniel P. Harriman;* so that under the warrant to remove the said *Harriman,* it being found that his residence was in *Brunswick,* the overseers of the poor of that town, were obliged to receive and support the said *Lydia* and her children, as his family.

Admitting that the testimony of the woman is admissible to prove that no other ceremonies of marriage have been had between them, other than those before the Justice, had *Harriman* and his reputed wife remained in the Province, there is no doubt that the effect of the Provincial act of their Assembly, of March, 1825, would have been to legalize the marriage before the Justice, to every intent : for after the usurpation of *Cromwell,* the British Parliament found it necessary to pass a similar statute, by which *(12 Ch. II. c. 33)* all marriages solemnized before justices of the peace, during that period, were declared valid. And what difference it shall make, their removing into this State before the passage of the act, in March, 1825, the Court are not prepared to say, but are strongly inclined to the opinion, that the effect is the same as though they had remained ; for the statute is not intended to operate upon the persons, but upon the record of the Justices, and characterize the transactions before them and the ministers, giving a legal effect to that which was not so at the time, by reason of the 26*th Geo. II.* and carrying into execution the wishes and designs of the parties contracting. But however this may be, the Court do not find it necessary to decide. To marry is one of the natural rights of human nature, instituted in a state of innocence for the protection thereof ; and was ordained by the great Lawgiver of the universe, and not to be prohibited by man. Yet, human forms and regulations in marriages are necessary for the safety and security of community ; but those forms and regulations are to be within the reach of every person wishing to improve them ; and if they are not, other forms and customs will be substituted ; and such was the case in this instance.

Before the days of *Pope Innocent, III.* solemnization of marriages in Churches was not known. After the agreement to cohabit, the man led the woman to his habitation, which was all the ceremony then in use ; and though by the English law such a marriage would not entitle the parties to those legal privileges they would enjoy if married according to the forms required by their statute, that is, the man to be tenant by curtesy and the woman to have her dowry, &c. ; yet in *Hayden vs. Gould,* 1 *Salk.* 119,

ORANGE,
February,
1829.

Newbury
vs.
Brunswick.

it was ruled, that a woman and her issue *might claim*, though the man should not, a legal privilege given by law, when he had not entitled himself to it, by a conformity to the matrimonial law.

It must, however, be admitted that great convenience is experienced from the celebration of nuptials before constituted authority, for it not only furnishes proof of the best description, but the preservation of it is directed by statute, and easily obtained when needed. But the law treating the mutual agreement of the parties as the *marriage*, regulating only the manner and form of celebrating it, and preserving the evidence thereof, admits proof other than a copy of the registry, or record of the magistrate, or witnesses—the declaration of the man or woman, the continued understanding of friends, and cohabitation, as evidence of the fact. Such was the case in *Leader* vs. *Barry*, 1 *Esp. Ca.* 352. —*Read* vs. *Passer*, *Peake's Ca.* 230.—*Kay* vs. *Duchesse de Pienne*, 3 *Camp.* 123.—*Fenton* vs. *Reed*, 4 *Johns.* 52, and the celebrated case of *Hervey* vs. *Hervey*, 2 *Bl. R.* 877.

It has been contended by the appellees, that the proceeding before the Justice of peace in the Province, did constitute a marriage *per verba de præssenti* between *Harriman* and *Lydia Page*. Of that there is little doubt. It was declared by *C. J. Holt*, in *Jesson* vs. *Collins*, 2 *Salk.* 437, that a contract *per verba de præsenti* was a marriage, namely, *I marry you*—*You and I are man and wife*. And again, he holds similar language in *Wigmore's* case, p. 438. And in *Fenton* vs. *Read* it was determined by the Court that a contract of marriage made *per verba de præsenti*, amounts to an actual marriage, and is as valid as if made *in facie ecclesiæ*. And in *Reed* vs. *Passer*, *Ld. Kenyon* says " that an agreement of marriage between the parties, *per verba de præsenti* was *ipsum matrimonium*." And as neither our statute, nor that of the 26 *Geo. II.* declares marriages void which are not consummated according to the provisions of them, no sound reason can be offered why the covenants and agreements of marriage between *Harriman* and *Lydia Page*, entered into before the Justice, *per verba de præsenti*, followed by cohabitation uninterrupted to the time of the order of removal, should not be deemed as valid to every intent as though made before the altar ; especially as it is viewed both in this State and in *England* in no other light than as a civil contract.—1 *Blk. Com.* 433.

It was a sufficient marrying to bind him to support her, and treat her as his wife ; and cohabiting with her for years, would bind him to support her children. And it follows that the town which is legally bound to support *Harriman*, in case of poverty, is bound to provide for all those who have a matrimonial or nat-

ural right to be supported by him. But there is another objection to this defence, too formidable to be overcome ; and that is, the long period of time those persons have cohabited together, being more than twenty years, reciprocally discharging every duty, we are bound to suppose, which the relation of husband and wife imposed upon them ; surrounded with a family of small children. Is it our duty—does the law require—does the interest of society demand, or respect for the matrimonial institution permit, that in this sideway manner, the legality of the marriage should be gone into at all? The Court are clearly of the opinion that it cannot. The harmony of the two is not thus to be disturbed, nor the children made liable to be bastardized. Therefore, in pursuance of the agreement of the parties, the order of removal is affirmed, and the town of *Newbury* recover their costs.

ORANGE,<br>February,<br>1829.

Newbury<br>vs.<br>Brunswick.

Judgment for appelees.

*Smith* and *Berry,* attornies for appellees.

*Marsh* and *Cushman,* attornies for appellants.