By the Court, Cowen, J.
The single question for the jury was, whether Abby, the person under whom the defendant claims, was a legitimate child. They found that she was; and it is now insisted, that the verdict was against the weight of evidence. She was bom some week or ten days before the marriage ceremony, and while her father was at sea; and there is no direct evidence of any marriage, nor perhaps of any engagement to marry before that time; though there can be little doubt, that the parties had at least agreed to be married, and the ceremony was delayed till after Abby’s birth, in consequence of the proposed husband’s accidental detention on his voyage.
*272 But it is true, that the parties had power to contract marriage inter se, before the husband went to sea, without the intervention of a clergyman. (Fenton v. Reed, 4 John. Rep. 52.) Suóh is the common law, which we must presume was the law of Connecticut at the time, in the absence of proof to the contrary. And it is insisted, that the circumstances were sufficiently strong in favor of such a marriage, to warrant the jury in finding that it took place. The public celebration or ceremony is sought to be explained, by saying, that it might very properly have been required for the satisfaction of the parties, the family and the public; and the long time during which Abby was received and treated as a legitimate child in her father’s family, is insisted on as a positive circumstance. To this may be added, the presumption that the parties would not indulge in a connection which was unmoral, not to say criminal, especially when they, might, themselves alone, have rendered it innocent, by a marriage contract per verba de prcesenti. We are to presume against a notorious act of immorality almost as strongly as we would against the commission of a legal crime. (Vid. Cusack v. White, 2 Rep. Const. Ct. So. Car. 282.) A woman married in a little more than twelve months after her husband went abroad; he was not afterwards heard of; and the wife continued to cohabit with her second husband. It was presumed, in favor of the legitimacy of their .children, that her first husband was dead at the time of her marriage with the second. (Rex v. Twyning, 2 Barn. & Ald. 386.) In Emmett v. Norton, (8 Carr. & Payne, 506,) Lord Abinger, €. B. told the jury, that, though the husband and wife lived in a state ■ of separation, they were not to presume that it was for adultery, or because the husband had turned her out of doors; but rather some innocent cause, e. g. a difference of temper. Where a bailee loses goods, negligence is not to be presumed, but' must be proved. (Brind v. Dale, id. 207.) Various .other cases might be mentioned, wherein the law presumes against the slightest violations of duty in the business and other relations of private life. *273 (Vid. Sill v. Thomas, id. 762, and Hanck v. Hooper, 7 id. 81.) Honesty, not fraud, is to be presumed. Thus, the law presumes not only against morality, but even the venial offence of negligence, or breach of private duty. The principle was applied to the case of a marriage de facto, in Fenton v. Reed. There, a woman’s marriage was publicly solemnized with another man, while her first husband was alive. She continuing after his death to cohabit with the other, a marriage de facto was held to be presumable by the jury. The presumption in that case, too, was allowed in favor of a right personal to the woman herself; a fortiori should it be allowed in favor of the legitimacy of her children. The only difference between the case cited and the one at bar is, that there the parties publicly cohabited, after the solemnization; while here, they secretly cohabited before. In both, there was a subsequent' and perfectly amicable cohabitation, during the lives of the parties. In either case, it must be admitted that, from appearances, it was open to infer a reliance by the parties on their public marriage alone; and that they had never contracted a private one, nor ever thought of doing so. In the reported case, however, I think' the inference quite as strongly warranted, as in this; and yet, it was allowed to be overcome by adverse circumstances of no greater strength. Secret cohabitation, pregnancy and birth, followed by immediate solemnization and public cohabitation for life, would seem to furnish considerable evidence that the parties had agreed, before that connection which resulted in pregnancy, to consider themselves as married in fact. The case bears no feature of heartless prostitution. The proofs are plain, that the object of both parties was marriage; and it seems not at all extravagant to presume, in favor of the female at leást, that before submitting to a connexion which she must otherwise have considered criminal in the highest degree, she would have required such a form of contract as to «change its character. Nothing appears in the case leading one to suppose that her husband would have hesitated in making such a contract ; *274 and that it was not publicly acknowledged and solemnized before the birth of the child, may be set down as the result of his accidental detention at sea, for a considerably longer time than the regular course of his voyage required. No peculiar form of words is necessary to such a contract. In Morton v. Fenn, (3 Doug. 211,) it appeared that the defendant promised to marry the plaintiff, if she would go to bed with him that night, which she did, and lived afterwards with him a considerable time. Lord Mansfield remarked that, before the marriage act, this would have been a good marriage, and the children legitimate, by the rules of the common law. (Holt, C. J. in Wigmore's case, 2 Salk. 438, S. P. Dumarsly v. Fishly, 4 Marsh. (Ken.) Rep. 372, S. P.) Thus, a contract in words merely ex-ecutory, followed by the act of the parties in lying together on the faith of such contract, is equivalent to words of present import. The circumstances are to be taken as giving a construction to the words, and rendering them presently operative. (3 Marsh, ut supra.) The evidence in the case at bar may, I think, be considered quite strong that Abby’s parents had, before her birth, made a contract of marriage, either per verba de prcesenti, ox futuro ; and whether in one form or the other, the consummation which resulted in her birth, according to the cases cited, rendered the marriage complete.
It seems to us, therefore, that the learned judge was right in submitting the question of a marriage in fact to the jury.
Bronson, J. dissented.
New trial denied.(a)

 See 2 Roper on Husband and Wife, (Jacob’s ed.) p. 461, et seq.