6 765
94 504

## THE STATE v. MURPHY.

1. An indictment is unobjectionable, both in form and substance, which alleges a conspiracy falsely and fraudulently to seduce from her virtue, and carnally to know an unmarried female, by procuring the consent of herself and parents, to her marriage with one of the conspirators; and then in furtherance of such conspiracy, producing a forged licence, assuring them of its genuineness, falsely and fraudulently representing another of the conspirators to be authorised to celebrate the espousals, who actually performed the ceremony; in consequence of all which the daughter and her father and mother were deceived, &c., and she cohabited with her pretended husband. And in such case it is immaterial whether a licence was necessary to the validity of the marriage or not.

2. It is an essential constituent of the crime of rape that the act should have been committed by force, and against the will of the female.

3. A conspiracy to commit an offence is not merged when the conspiracy is executed, where the conspiracy and the act done are misdemeanors of the same grade; but the indictment may be framed with a view to the punishment of either

4. *Quere?* Are not the statutes in respect to the obtaining a licence to celebrate the contract of espousal, and the form of its solemnization, directory merely; and is it not competent for persons of proper age to consummate the contract *per verba de præsenti*, without a license, or the interposition of one of the functionaries, designated by the law.

On points referred by the Circuit Court of Butler.

The indictment charges that the defendant, with other persons, whose names are particularly mentioned, did, on the 4th of February, 1843, conspire, &c., wickedly, maliciously, &c., to seduce from her virtue one Temperance Buckalow, a young maiden lady; and to assist and enable "John Henry Watts to effect a pretended marriage with the said Temperance Buckalow; and to make John Buckalow and Temperance Buckalow, sen., (father and mother of the said Temperance,) believe it to be legal, and thereby to enable him, the said John Henry Watts, carnally to know her, the said Temperance Buckalow, without legal matrimony between them, the said John Henry Watts and Temperance Buckalow."

The indictment further charges, that John Henry Watts, Wilson Murphy and the other conspirators afterwards, on the 24th of March, 1843, in pursuance of, and according to the conspiracy,

&c., had as aforesaid, did repair to the house of John and Temperance Buckalow, father and mother, &c., and falsely represented to them and their daughter, Temperance Buckalow, that the said John Henry Watts had obtained a license from the clerk of the county court of Butler, giving authority to any one legally authorized to celebrate the rites of matrimony between the said John Henry Watts and the said Temperance Buckalow. It is further charged, that the said John Henry Watts, Wilson Murphy and the other conspirators, in pursuance of the said conspiracy, did produce to the said John Buckalow and Temperance Buckalow, the father and mother, and Temperance, daughter as aforesaid, on the day and year last aforesaid, at the house of John Buckalow, in the county aforesaid, a paper which they falsely represented to the father, mother and daughter, as the said marriage license: and that sterling B. Parker (one of the conspirators) represented himself as being then and at that time a justice of the peace for Butler county; and he did then and there unlawfully marry the said John Henry Watts and Temperance Buckalow: and the said John Henry Watts then and there, pretending to be the lawful husband of the said Temperance, went to bed with her, &c.

On this indictment, a *capias* issued, requiring the arrest of all the conspirators, which was executed on the defendant only; who raised the following points upon demurrer:

1. That the indictment did not show any offence had been committed; because, in charging the conspiracy, it used the present instead of the past tense.

2. The indictment did not show that the conspiracy was to seduce Temperance Buckalow against her consent, or the consent of her parents; and because it did not show that the conspiracy was thus consummated.

3. The indictment shows the conspirators, in consummating their purpose, to have committed a civil trespass, and the conspiracy cannot be punished as an offence.

4. The conspiracy charged is not indictable, because the act done in pursuance of it, is a misdemeanor only.

5. The act is a felony more highly penal than the conspiracy; and the conspiracy is not indictable.

The demurrer was overruled; and the questions of law thereupon raised, being deemed novel and difficult, were referred to

this court for its decision—the defendant having been first adjudged guilty upon plea and verdict.

G. W. GAYLE, for the defendant.—1. The law punishes offences committed, and not those which are merely contemplated. Every thing must be specifically alleged, and nothing can be taken by intendment. [3 Stew't Rep. 123.]

2. To this point, he cited Roscoe Crim. Ev. 366; Russ. on Cr. 498; and insisted that there was a marriage *de facto;* consequently the actors were not chargeable with a crime. [33 Law Lib. 25, 28, 45; 4 Phil. Ev. 286; 1 Chit. Plead. 63, note B.]

3. A conspiracy to commit a trespass is indictable. [2 Russ. on Cr. 503.] If there was not a marriage, then it was a case of debauchery, for which the father has a remedy by action of trespass *per quod servitium amisit;* and the daughter's injury may perhaps be repaired by suit. [1 Chit. Plead. 164.]

4. Where a felony or a misdemeanor is in fact committed in pursuance of a conspiracy, the conspiracy is merged and cannot be punished as a distinct offence. [5 Mass. Rep. 106; Roscoe's Crim. Ev. 258; 34 Eng. C. & Rep. 383, 392.] The offence charged to have been committed, amounts to a rape, and merges the conspiracy, because it is more highly punished. [1 Russ. C. Law, 526, 8, note 16; Arch. C. Plead. 375; 34 Eng. C. & Rep. *ut supra;* Clay's Dig. 430, 3, 414.]

ATTORNEY GENERAL, for the State. The conspiracy to procure the consent of Miss Buckalow by fraud or false affirmations, amount to such a contrivance as the law denounces an offence. [3 Chitty's C. L. 1179; 1 Leach's Cr. L. 39; 3 Burr. Rep. 1321; id. 1434; 2 Yeates' Rep. 114.]

All conspiracies to prejudice another in person, property, or character are offences at common law; and our statute is merely declaratory of the common law. True, in consummating the conspirators' design, a private injury was perpetrated, yet this did not atone for the offence against public morals. [2 Hawks. C. L. 72, § 2; 3 Chit. Cr. L. 1139; 2 Yeates', *ut supra;* 1 Dev. Rep. 357.]

The conspiracy was a misdemeanor, though it was necessary to show some *overt act* as the statute requires. The consummation of the conspiracy is nothing more than a misdemean-

or; and between offences of equal grade there can be no merger. It is allowable to punish the first offence, or to elect for which the indictment shall be framed. [4 Wend. Rep. 265.]

Morally, the conspirators, in acting out their purpose, may have been guilty of a rape; but at common law, force must have been employed in order to make out that crime, and the case does not come within our statute which enlarges the offence. [4 Bla. Com. 210; 1 Hawk. P. C. 121; 3 Chit. Cr. L. 810; Wheeler's Cr. Cases, 152.]

COLLIER, C. J.—The indictment, it is believed, is sufficiently precise and direct in its allegations, so that the question is, whether the offence it attempts to charge is punishable by law.

A conspiracy is said to be a consultation or agreement between two or more persons, either falsely to accuse another with a crime punishable by law, or wrongfully to injure or prejudice a third person, or any body of men in any other manner; or to commit any offence punishable by law; or to do any act with intent to prevent the course of justice; or to effect a legal purpose with a corrupt intent, or by improper means. [1 Hawk. P. C. chap. 27, § 2, et post; Arch. Cr. Plead. 390–1; 4 Bla. Com. 136, n. 31; 3 Chitty's C. L. 1139; 2 Russ. on Cr. 553.] In Taylor and Robinson's case, [Leach's Cr. Law 39,] a woman living in the service of her master, conspired with another man that he should personate her master, and in that character should solemnize a marriage with her; which was accordingly done, for the purpose of afterwards raising a specious title to the property of the master. The gist of the indictment was for the conspiracy, and the conviction was founded on that ground. It was considered that, although no actual injury was proved, yet it was the province of the jury to collect from all the circumstances of the case, whether there was not an intention to do a future injury to the person whose name was assumed. So a conspiracy to seduce a daughter from her father's house, &c., has been held to be an indictable offence. [Rex v. Lord Grey and others, 1 East's P. C. chap. 11, § 10; Rex v. Sir Francis Blake Deloval, and others, 3 Burr. Rep. 1434.]

In The State v. Buchanan, [5 Har. & Johns. Rep. 317, 368,] the law applicable to conspiracy as a criminal offence is most elaborately and learnedly considered. The conclusions of the court are, that an indictment will lie at common law—1st, For a

conspiracy to do an act not illegal, nor punishable, if done by an individual, but immoral only. 2d, For a conspiracy to do an act neither illegal nor immoral in an individual, but to effect a purpose, which has a tendency to prejudice the public. 3d, For a conspiracy to extort money from another, or to injure his reputation by means not indictable if practised by an individual, or by verbal defamation, and that whether it be to charge him with an indictable offence or not. 4th, For a conspiracy to cheat and defraud a person by means of an *act*, which would not in law amount to an indictable cheat, if effected by an individual. 5th, For a malicious conspiracy to impoverish or ruin a third person in his trade or profession. 6th, For a conspiracy to defraud a third person by means of an act not *per se* unlawful, and though no person be thereby injured. 7th, For a bare conspiracy to cheat or defraud a third person, though the means of effecting it should not be determined on at the time. 8th, That a conspiracy is a substantive offence, and punishable at common law, though nothing be done in execution of it. 9th, That in a prosecution for a conspiracy, it is sufficient to state in the indictment, the conspiracy and the object of it; the means by which it was intended to be accomplished need not be set out, being only matters of evidence to prove the charge, and not the crime itself.— [See, also, Commonwealth v. Judd, et al. 2 Mass. 329; State v. Rikey and others, 4 Hals. Rep. 293; Commonwealth v. Tibbetts, 2 Mass. Rep. 536; Commonwealth v. Warren, 6 id. 74: Commonwealth v. Davis, 9 id. 415; The King v. Edwards, 8 Mod. Rep. 320; Rex v· Eccles, and others, 13 East's Rep. 230; The King v. Nicholls, id. 412; Lambert v. The People, 9 Cow. Rep. 569; 3 Chitty's C. L. 1139, *et post*, and cases there cited.]

In the case before us, it is explicitly alleged, that the object of the conspirators was to impose on Temperance Buckalow, and her father and mother by inducing them to believe that a forged license was genuine, and that one of their number was a justice of the peace authorized to celebrate the rites of matrimony; and thus obtain the consent of the father, mother and daughter to the marriage of the latter, &c. Whether the act contemplated would be illegal or punishable if done by an individual, we need not consider; for it is clear that it was eminently immoral, and intended to deceive and defraud, and this is quite sufficient to constitute the offence of conspiracy.

97

Conceding, for the purposes of this argument, that the espou-
sals may be celebrated and the matrimonial connection formed
without the authority of a license first obtained from the clerk,
and still the defendant may be guilty. Miss Buckalow might,
(as every woman should,) have refused to unite her fortunes with
a lover, unless the appropriate office furnished record evidence
that the conjugal relation was duly consummated between them
So the assent of the parents may have been yielded to the for-
mation of this most important relation, upon the condition that it
was celebrated according to the directions of the statute. The
deception practised by means of the forged license, and misrep-
resenting the official character of the person who undertook to
repeat the marriage ceremony, when considered in its conse-
quences, is a high offence against morals; and merits the full
measure of reprehension with which it is visited by the law.

It is insisted for the defendant, that although the conspiracy
may have been an indictable offence, yet having been consum-
mated by the commission of a felony, the conspiracy is merged
in the act which was done, and is no longer punishable as a mis-
demeanor. The indictment does not allege a carnal knowledge
by force, but merely that the purpose of the conspirators was ef-
fected by fraud. It is an essential constituent of the crime of
*rape*, that the act should have been committed by force and
against the will of the female. [4 Bla. Com. 210; 3 Chitty's Cr.
L. 810; 1 Russell on Cr. 556, *et post*, and cases there cited; 1
Hawk. P. Cr. 121, *et post.*] If a woman be beguiled into her
consent by marrying a man who had another wife living, or by
causing the nuptials to be illegally celebrated, and persuading her
that the directions of the law had been observed; in neither case
will the pretended husband be guilty of a rape. There are cases
which lay down the law in general terms, that wherever the con-
sent is obtained by fraud, the crime has not been committed.—
[Regina v. Saunders, 8 Carr. & P. Rep. 265; Regina v. Wil-
liams, id. 286; 3 Chitty's Cr. L. 810; Commonwealth v. Fields,
4 Leigh's Rep. 648.]

In The People v. Mather, [4 Wend. Rep. 265,] the court say,
"It is supposed that a conspiracy to commit a crime is merged in
the crime when the conspiracy is executed. This may be so
where the crime is of a higher grade than the conspiracy, and
the object of the conspiracy is fully accomplished; but a conspi-

racy is only a misdemeanor, and when its object is only to commit a misdemeanor, it cannot be merged. Where two crimes are of equal grade, there can be no legal technical merger."

In the case of the Commonwealth v. Kingsbury, et al. [5 Mass. Rep. 106,] the defendants were charged with the fraudulent removal of goods upon a conspiracy previously formed, under such circumstances as made them guilty of a felony. The question was raised whether the defendants could be prosecuted for the conspiracy, and the court was of opinion that if the conspiracy had not been effected, it might have been punished as a distinct offence; "but a contrivance to commit a felony, and executing the contrivance, cannot be punished as an offence distinct from the felony, because the contrivance is a part of the felony, when committed pursuant to it. The law is the same respecting misdemeanors. An intent to commit a misdemeanor, manifested by some overt act, is a misdemeanor; but if the intent be carried into execution, the offender can be punished but for one offence." The latter branch of the quotation must be regarded as a mere *dictum* of the court. Having determined that the act done was a *felony*, and for that reason the conspiracy was merged, the case did not require an opinion as to what would be the effect of the act upon the conspiracy under which it was consummated, where it was a misdemeanor of equal grade with the conspiracy itself. The case cited from *Wendell* is more consonant with principle, and we do not hesitate to recognize it as authoritative.

What offence was committed by the marriage? This, we have seen, when followed by the consequences alleged in the indictment, did not amount to a rape. We can only regard it as merely carrying out the conspiracy, which was an offence in itself whether consummated or not.

We have said that the guilt of the conspirators cannot be affected by the validity of the marriage between Miss Buckalow and Watts, and perhaps we should be going beyond what strict duty requires, were we to consider whether, what transpired, established the relation of husband and wife. It may, however, be remarked, that the solemnization of the contract of espousal is *non juris naturalis aut divini*, but it is *juris positivi*. [Calmet's Dic. Marriage, tit. Marriage; Watson's Dic. Marriage, 621–2; Step. Com. 286; Shelford's Law of Mar. 3, *et post*, and notes. See, also, the authorities cited below.] Marriage, then, being a civil con-

tract, may it not be consummated by persons of competent age, &c., *per verba de presenti*, where there is no statute which impliedly or expressly declares *it void* if not solemnized according to express forms? Are not our statutes in respect to marriage directory rather to the officer who is authorized to issue a license, and the functionaries who are to celebrate it, than to the parties who enter into this relation? If this be so, could Watts be heard to object that he had not taken Miss Buckalow for his wife, if they both, in answer to the usual questions, assented to a union?— Whether she might not, if overreached by misrepresentation and fraud, repudiate him, is another question. [Clay's Dig. 372, 374; Londonderry v. Chester, 2 New Hamp. Rep. 268, and cases there cited; Dumaresly v. Fishly, 3 A. K. Marsh. Rep. 368; Fenton v. Reed, 4 Johns. Rep. 52; Jackson v. Winne, 7 Wend. Rep. 47; Milford v. Worcester, 7 Mass. Rep. 48; 3 Phil. Ev. C. & H.'s notes, 1147; Shelford's Law of Mar. 3 to 38; Newberry v. Brunswick, 2 Verm. Rep. 160; Cram v. Burnham, 5 Greenl. Rep. 216; Huntz v. Searly, 6 Binn. Rep. 405; Jackson v. Claw, 18 Johns. Rep. 346; Bashaw v. Tennessee, 1 Yerger's Rep. 117; Reeve's Dom. Rel. 196, 200, 290; Pearson v. Howey, 6 Hals. Rep. 17, opinion of Ford, Justice; 4 Kent's Com. 4th ed. 74 to 93, and citations there made.]

Without undertaking to consider the questions we have stated, we have thought it proper to propose them and cite the authorities by which they may be answered, that the parties who were the principal persons in the drama, may be brought understandingly to inquire in what relation they stand to each other. What we have said is decisive of the case, and we have only to add, that the judgment of the circuit court is affirmed.