There was no error in permitting the prosecution to inquire of the prosecutrix as to the place and manner of her living immediately after her alleged marriage to the prisoner. It was, although not a part of the res gestas, nevertheless competent, so far as it tended to show cohabitation between the prisoner and herself, and that they lived together as married people. Such intercourse and mode of life was a legitimate corroboration of the statement of the witness as to the actual marriage, and one to the benefit of which the prosecution as well as the witness was entitled. Confessions and cohabitation would be competent evidence alone of a marriage in most civil actions. It is competent as evidence in all, but not sufficient in prosecutions for bigamy, actions for criminal conversation and other cases, in which a marriage in fact must be proved. But in this as in every other case, express evidence of a marriage in fact may be strengthened and supported by that which tends to prove the same fact, or from which in other actions and proceedings the existence of the fact might be presumed. The court properly allowed proof from the prosecutrix, of the manner in which the parties lived as regarded each other, for the few weeks immediately succeeding the imputed marriage. The evidence was clearly competent as tending to prove a marriage in fact, resulting from a contract per verba de futuro, followed by cohabitation, which would have been allowable. (Reeve's Dom. Rel., 3d ed., p. 307, note 1, and cases cited.)
The only other question is, as to the sufficiency of the second marriage to sustain the indictment. There was no satisfactory evidence that the marriage was solemnized by a minister of *Page 397 
the gospel or by any magistrate authorized by law to celebrate the rite. The statutes of this state only require the solemnization of marriages before a minister, priest, or magistrate, and in the presence of witnesses, for the purpose of registration: for all other purposes, they are valid without such celebration and attestation. (3 R.S., 5th ed., p. 228, §§ 7, 8.) The statute expressly declares that marriage, so far as its validity is concerned, shall continue in this State a civil contract, to which the consent of parties capable in law of contracting shall be essential. (Id., p. 227, § 1.) No particular mode of declaring or substantiating this consent is prescribed or required by law. The rules of the civil and common law, which were identical in this respect, prevail in this State. The essence of the contract, as of all contracts, is the consent of the parties; and its validity does not depend upon any form of celebration or upon the fact of cohabitation. All that the law or religion requires is that the consent be given in a deliberate manner, so as to show, beyond all question, the intent of the parties. The maxim of the civil law was, "Consensus nonconcubitus facit matrimonium;" and this is the rule of the common law, and the canon law adopts the same view. Swinburne, in his Book of Espousals (§ 4), quoted in Shelford on Marriage and Divorce (p. 8), says: "That is a present and perfect consent, the which alone maketh matrimony, without either public solemnization or carnal copulation, for neither is the one nor the other the essence of matrimony, but consent only." A contract per verba depresenti, though not attended by consummation, constitutes a valid marriage, so as to avoid a second marriage followed by consummation. (Dalrymple v. Dalrymple, 2 Hagg. Consist. Rep., 66.) The doctrine that the contract of marriage rests upon the same footing as any other contract, so far as its valid inception is concerned, is the doctrine of both the common and civil law. The consent of parties, without any peculiar forms or ceremonies, is all that is required to its valid celebration. (Reeve's Dom. Rel., 3d ed., p. 196 and note; Starr v. Peck, 1 Hill, 270;Fenton v. Read, 4 Johns., 52; Clayton v. Wardwell, 4 Comst., 230; Milford v. Worcester, 7 Mass., 55.) *Page 398 
It is said, however, that, in order to constitute a valid marriage by contract in presenti, the parties must be capable of contracting. This is, doubtless, true; and, in order to a valid contract of any kind, the parties must be capable of contracting, that is, they must be of proper age and understanding, and must act voluntarily. But, whether a marriage is celebrated in facie ecclesiæ, or is contracted by the present consent of the parties, it is the consent alone that creates the marital relation; and, if either party is incapable of giving consent, there is no marriage. The statute of bigamy is consistent with the common law, and recognizes any form of marriage, either for the first or second marriage, which would be good at common law; and the inquiry is, whether the marriage alleged was valid, that is, as to the first marriage, whether it was valid as a marriage in fact, and as to the second, whether it would have been valid but for the first, which rendered the accused incapable of contracting. (3 Greenl. Ev., § 205.) The second marriage is a nullity; but it fixes the guilt of the accused, and subjects him to punishment for bigamy, instead of seduction, or any other offence known to the laws. The bigamist, although he is not capable of contracting the second marriage, may, nevertheless, "marry another person," so as to incur the penalty denounced against bigamy. (2 R.S., p. 687, § 8.) And he may do this in any form, or by any words, which, but for the legal bar, would constitute a good marriage. In Rex v.Pierson (5 C. P., 414), it was held, that, although the second marriage was to a woman who assumed a name not her own, which would have rendered a first marriage void, the party was, nevertheless, guilty of the crime of bigamy; that the parties could not be allowed to evade the punishment for an offence by contracting a concededly invalid marriage. And to the same effect, see Rex v. Allison (R. R.C.C.R., 109). It was a question for the jury whether there was a present agreement between the parties to take each other for husband and wife; and as the presence of a clergyman was not essential to the validity of such contract, it is not material whether one or the other party, or both, were deceived or mistaken as *Page 399 
to the character of the witness, or the character or efficacy of the substantiation of the contract. Most certainly, the prisoner should not be permitted to evade punishment by showing that he deceived his victim, not only as to his capacity to contract, but also as to the character of the individual called in to attest the contract; that he induced the female to believe that their union had the sanction of the Church as well as the binding force of an enduring civil contract. There was no error in the charge, that it was of no consequence whether the man represented to be a minister was such, or not. It is true, there is no valid exception to the charge. The exception is general, and the entire charge is conceded to be right, except this isolated clause. If it was supposed this was erroneous, the attention of the judge should have been called to it by a pointed exception. The refusal to charge, as requested, that there could be no marriage by a mere agreement in presenti, so as to authorize a prosecution for bigamy, was, within the well-established rules of law, proper.
The judgment must be affirmed.
All the judges concurring,
Judgment affirmed.