Wright, J.
To convict of bigamy, a marriage in fact must be proved; and reputation and cohabitation alone are not suf *394 ficient. The fact of a marriage may be proved by a witness .present at the celebration; and this is the ordinary way of proving it. In this State, marriage is a civil contract, and may exist without any formal solemnization by minister or magistrate.
The marriage of the prisoner to Sarah E. Blair, in February, 1845, and that she was living at the time of the trial, was proved. To establish the fact of a second marriage, in September, 1860, to Jane White, she was called and examined - as the principal witness for the prosecution. She testified, in substance, that the prisoner made her acquaintance in May, 1860, and that in August following,, and* while she was at work as a servant in a hotel at Middletown Point, they entered into an engagement to be married in September. She was to come to New York for that purpose, at the expiration of her month’s service. On the 12th September the prisoner met her at the steamboat landing in the city, and conducted her to a .house in Thompson street, where he had taken rooms. That night she staid at ner father’s house in Brooklyn, and in the afternoon of the next day came over to the city and' met the prisoner at the house in Thompson street. They were together until about 7 o’clock in the evening, when the prisoner went out and returned in a few minutes with a person represented to be a minister. He was dressed like one, and had on a white necktie. She did not ask his name. The marriage ceremony was then performed by this person. He used the form of marriage of the Protestant Episcopal Church. He inquired of the witness if she would take the prisoner for her husband, and she replied in the affirmative; and the prisoner was asked if he would have her for his wife, and, upon his replying affirmatively, the minister declared them man and wife. The person officiating gave her a certificate, using a partly printed form, and filling in the blanks by writing The certificate was taken by the prisoner and putin his trunk, and was afterwards seen by a sister of the witness, when the parties were living together as man and wife. This marriage ceremony was followed by cohabitation, which continued for about a year. It *395 was shown, by other witnesses, that the prisoner called her his wife, wrote letters to her as such, and admitted that he had been married to her in September, 1860.
If this evidence was to be credited, a marriage in fact, as contradistinguished from one inferable from circumstances,-was proved. It is true that the authority, or official character, of the person performing the marriage ceremony was not affirmatively shown; and there was some proof in the case to excite at least a suspicion that the prisoner had procured the man who officiated to falsely represent himself as a clergyman. If, however, to constitute a valid marriage, it must be solemnized by a minister or magistrate, the evidence was sufficient, prima facie, to prove a marriage in fact. A person appearing in the character of a clergyman performed the ceremony, using the marriage service of the Protestant Episcopal Church. The marriage was followed by cohabitation, and the prisoner distinctly admitted to others that he was married at the time. If the person officiating was not a clergyman, it was for the prisoner to show that fact, after a prima facie case was made out against him. (State v. Rood, 12 Vt., 296; Rex v. The Inhabitants of Frampton, 10 East., 282.) But the Recorder was right in his charge to the jury. In this State there may be a valid marriage, though not formally solemnized by a clergyman, or consent declared before a magistrate. If parties, competent to contract, in the presence of witnesses, agree together to be husband and wife, and afterwards cohabit and recognize each other as such, it is a sufficient marriage to sustain an indictment for bigamy, in the event of one of the parties having before that time married another, who is still living. It was not error, therefore, for the judge to instruct the jury that, if the prisoner and Jane White agreed, in the presence of the man represented to be a minister, to be man and wife, and after-wards lived together as such, that was, in the eye of the law, a sufficient marriage to sustain an indictment for bigamy—the fact that the prisoner had, before that time, married Sarah E. Blair, and she was then living, being admitted. And it was óf no consequence whether the man represented to be a minis *396 ter was such, or not. It is only claimed that the latter branch of the charge is erroneous; but marriage in this State being a civil contract, and not requiring the intervention of minister or magistrate to make it legal, this part of the charge was manifestly correct.
The judgment of the Supreme Court, and Court of General Sessions, should be affirmed.
Allen, J.
There was no error in permitting the prosecution to inquire of the prosecutrix as to the place and manner of her living immediately after her alleged marriage to the prisoner. It was, although not a part of the res gestas, nevertheless competent, so far as it tended to show cohabitation between the prisoner and herself, and that they lived together as married people. Such intercourse and mode of life was a legitimate corroboration of the statement of the witness as to the actual marriage, and one to the benefit of which the prosecution as well as the witness was entitled. Confessions and cohabitation would be competent evidence alone of a marriage in- most civil actions. It is competent as evidence in all, but not sufficient in prosecutions for bigamy, actions for criminal conversation and other cases, in which a marriage in fact must be proved. But in this as in every other case, express evidence of a marriage in fact may be strengthened and supported by that which tends to prove the same fact, or from which in other actions and proceedings the existence of the fact might be presumed. The court properly allowed proof from the prosecutrix, of the manner in which the parties lived as regarded each other, for the few weeks immediately succeeding the imputed marriage. The evidence was clearly competent as tending to prove a marriage in fact, resulting from a contract per verba de futuro, followed by cohabitation, which would have been allowable. (Reeve’s Dom. Rel., 3d ed., p. 307, note 1, and cases cited.)
The only other question is, as to the sufficiency of the second marriage to sustain the indictment. There was no satisfactory evidence that the marriage .was solemnized by a minister of *397 the gospel or by any magistrate authorized by law to celebrate the rite. The statutes of this state only require the solemnization of marriages before a minister, priest, or magistrate, and in the presence of witnesses, for the purpose of registration : for all other purposes, they are valid without such celebration and attestation. (3 R. S., 5th ed., p. 228, §§ 7, 8.) The statute expressly declares that marriage, so far as its validity is concerned, shall continue in this State a civil contract, to which the consent of parties capable in law of contracting shall be essential. (Id., p. 227, § 1.) Mo particular mode of declaring or substantiating this consent is prescribed or required by law. The rules of the civil and common law, which were identical in this respect, prevail in this State. The essence of the contract, as of all contracts, is the consent of the parties; and its validity does not depend upon any form of celebration or upon the fact of cohabitation. All that the law or religion requires is that the consent be given in a deliberate manner, so as to show, beyond all question, the intent of the parties. The maxim of the civil law was, 11 Consensus non concvhitus facit matrimonium and this is the rule of the common law, and the canon law adopts the same view. Swinburne, in his Book of Espousals (§ 4), quoted in Shelford on Marriage and Divorce (p. 8), says: “ That is a present and perfect consent, the which alone maketh matrimony, without either public solemnization or carnal copulation, for neither is the one nor the other the essence of matrimony, but consent only." A contract per verba de presentí, though not attended by consummation, constitutes a valid marriage, so as to avoid a second marriage followed by consummation. (Dalrymple v. Dalrymple, 2 Hagg. Consist. Rep., 66.) The doctrine that the contract of marriage rests upon the same footing as any other contract, so far as its valid inception is concerned, is the doctrine of both the common and civil law. The consent of parties, without any peculiar forms or ceremonies, is all that is required to its valid celebration. (Reeve’s Dom. Rel., 3d ed., p. 196 and note; Starr v. Peck, 1 Hill, 270; Fenton v. Read, 4 Johns., 52; Clayton v. Wardwell, 4 Comst., 230; Milford v. Worcester, 7 Mass., 55.)
*398 It is said, however, that, in order to constitute a valid marriage by contract in presen ti, the parties must be capable of contracting. This is, doubtless, true; and, in order to a valid contract of any kind, the parties must be capable of contracting, that is, they must be of proper age and understanding, and must act voluntarily. But, whether a marriage is celebrated in facie ecclesice, or is contracted by the present consent of the parties, it is the consent alone that creates the marital relation; and,- if either party is incapable of giving consent, there is no marriage.' The statute of bigamy is consistent with the common law, and recognizes any form of marriage, either for the first or second marriage, which would be good at common law; and the inquiry is, whether the marriage alleged was valid, that is, as to the first marriage, whether it was valid as a marriage in fact, and as to the second, whether it would have been valid but for the first, which rendered the accused incapable of contracting. (3 Grreenl. Ev., § 205.) The second marriage is a nullity; but it fixes the guilt of the accused, and subjects him to punishment for bigamy, instead of seduction, or any other offence known to the laws. The bigamist, although he is not capable of contracting the second marriage, may, nevertheless, “ marry another person,” so as to incur the penalty denounced against* bigamy. (2 R. S., p. 687, § 8.) And he may do'this in any form, or by any words, which, but for the legal bar, would constitute a good marriage. In Rex v. Pierson (5 C. & P., 414), it was held, that, although the second marriage was to a woman who assumed a name not her own, which would have rendered a first marriage void, the party was, nevertheless, guilty of the crime of bigamy; that the parties could not be allowed to evade the punishment' for an offence by contracting a concededly invalid marriage. And to the same effect, see Rex v. Allison (R. & R. C. C. R., 109). It was a question for the jury whether there was a present agreement between the parties to take each other for husband and wife; and as the presence of a clergyman was not essential to the validity of such contract, «it is not material whether one or the other party, or both, were deceived or mistaken as *399 to the character of the witness, or the character or efficacy of the substantiation of the contract. Most certainly, the prisoner should not be permitted to evade punishment by showing that he deceived his victim, not only as to his capacity to contract, but also as to the character of the. individual called in to attest the contract; that he induced the female to believe that their union had the sanction of the Church as well as the binding force of an enduring civil contract. There was no error in the' charge, that it was of no consequence whether the man represented to be a minister was such, or not. It is true, there is no valid exception to the charge. The exception is general, and the entire charge is conceded to be right, except this isolated clause. If it was supposed this was erroneous, the attention of the judge should have been called to it by a pointed exception. The refusal to charge, as requested, that there could be no marriage by a mere agreement in presentí, so as to authorize a prosecution for bigamy, was, within the well-established rules of law, proper.
The judgment must be affirmed.
All the judges concurring,
Judgment affirmed.