<div align="center">JACKSON, <em>ex dem.</em> VAN BUSKIRK, <em>against</em> CLAW.</div>

<div style="margin-left:2em"><em>Cohabitation, and the declarations of the parties, are prima facie evidence of marriage.</em></div>

EJECTMENT for land in *Cocksackie*, tried at the *Greene* circuit, in *December* last, before Mr. Justice *Van Ness*.

But where, without any apparent rupture, the parties, after a cohabitation of about two years, separated, nearly forty years ago, and continued separate, without any claims or pretensions on each other as husband and wife, it *seems*, that the presumption of marriage arising from the previous cohabitation, will be rebutted.

A. and B., after cohabiting, as man and wife, separated in 1781, and the wife went to her friends in 1783, when she removed out of the state, and was never heard of afterwards. Her husband, in 1781, married another woman, with whom he lived 38 years, and died leaving children : *Held*, that the absence of the first wife, for seven years, from 1783 to 1790, without having been heard of during that time, was sufficient to afford a presumption of her death; and although the second marriage of A. in 1781, was void, his first wife being then living; yet his continued cohabitation with his second wife for 27 years after 1790, and the reputation of their marriage, and the good character in society of the parties, during all that time, and until the death of A. afforded sufficient ground to presume an actual marriage between them, after 1790, or the time of the presumed death of the first wife, so as to entitle his second wife to *dower* in the lands which her husband was seised of during that period.

The plaintiff proved, that *John A. Van Buskirk* owned the farm on which the defendant now lives, and sold it to the defendant, about 15 years before the trial. That the lessor of the plaintiff, *Hannah Van Buskirk*, as widow of *John A. Van Buskirk*, presented her petition to the Court of Common Pleas of *Greene* county, to have her *dower* in the farm so purchased and occupied by the defendant, set off to her, and admeasurers were accordingly appointed, who made their report, setting off twenty-three acres of the farm to the lessor, for her dower, which report was filed and recorded on the 30th of *May*, 1819. The present suit was brought to recover the possession of the twenty-three acres, parcel of the farm of the defendant, so assigned and set off to the lessor, for her dower. The defence set up at the trial was, that the lessor of the plaintiff was not the lawful wife of *John A. Van Buskirk*. A witness for the plaintiff testified, that he had known *John A. Van Buskirk* and his wife, the lessor, between 35 and 40 years, during which time, they resided at, and near *Cocksackie*, lived together as man and wife, and had several children, the eldest being about 37 years old. That the lessor of the plaintiff had, during all the time the witness was acquainted with her, sustained a good character in society. That he knew her husband when he was a boy; that he was born in *New-Jersey*, and went from *Cocksackie* to that state, before the revolutionary war, and returned again to *Cocksackie*, after the peace. Another witness, on his cross-examination, said, that *John A. Van Buskirk* told him, that he had a wife previous to his marriage with the lessor, but that his first wife died before his second marriage.

*J. S.*, a witness for the defendant, testified, that he knew the lessor of the plaintiff 50 years ago, and that her maiden name was *Pudney*, and she once lived with the witness's mother, at *Fishkill*, as a hired servant. That in *October*, 1779, *John A. Van Buskirk* hired a room of the witness, for himself, and a woman he called his wife, and a child named *John*. The woman's maiden name was *Jane Blauw*, and they both said that they were married. They occupied the room until *April*, 1780, (and during that time *Hannah Pudney* lived in the same house, as a servant to the mother of the

witness,) when *Van Buskirk* removed with his family to *New Marlborough*, where he remained about a year. In *April,* 1781, *Van Buskirk* came to the house of the witness at *Fishkill,* and said, that he and his wife had parted, and that she had gone to *Long-Island* to her friends. He wished to be hired, and the witness, accordingly, hired him, and he continued in the service of the witness, about six months, during which time, the lessor lived in the family, and married *Van Buskirk,* and in the same year, they removed to *Athens.*

The counsel for the plaintiff objected to the declarations of *Van Buskirk* as evidence of his former marriage, but the judge overruled the objection.

*J. S.,* the witness, on being asked by the plaintiff's counsel, whether *Van Buskirk,* before his second marriage, had not told him that his first wife was dead, answered, that *Van Buskirk* showed him a letter, stating that his first wife was dead ; but the witness knew it to be in the hand-writing of *Van Buskirk* himself. The witness stated, that he had not seen the first wife of *Van Buskirk,* since she left *Fishkill,* in 1780 ; that in *December,* 1783. he was on *Long Island,* when he heard, that *Van Buskirk's* first wife was living, and had recently been there on her way to *Nova Scotia,* where she intended to reside, but the witness had never seen her since. That in 1784, he saw *Van Buskirk,* at *Cocksackie,* where he then lived, and *Van Buskirk* desired him to say nothing of his first marriage. The eldest son of *Van Buskirk,* who was called as a witness, stated, that he was the eldest child of *Van Buskirk,* and the lessor, and was thirty-six years old ; that his father and mother had always lived together, since his recollection, until his father died, about two years ago ; and that he never had heard, until a few months before the trial, that his father had a wife previous to his marriage with the lessor.

A verdict was taken for the plaintiff, subject to the opinion of the Court, on a case containing the facts above stated, which was submitted to the Court without argument.

SPENCER, Ch. J. delivered the opinion of the Court.

The only question reserved for the consideration of the Court, is whether the lessor of the plaintiff was the wife of John A. Van Buskirk, at the time of his death. It is not pretended, if she was his wife, that she is not entitled to recover. It appears that Van Buskirk and the lessor cohabited as man and wife, at and near Cocksackie, between thirty-five and forty years, and had a number of children, the eldest of whom is about thirty-seven years old. On the part of the defendant, it was found, that Van Buskirk, in 1779, cohabited with a woman of the name of Jane Blauw, whom he called his wife. They both said that they were married, and had a son, whom they called John. They lived together in Fishkill, until 1780, when they removed to New Marlborough. In 1781, Van Buskirk returned to Fishkill, and said, that he and his wife had parted, and that she had gone to Long-Island, to her friends. Within six months thereafter, Van Buskirk and the lessor were married, and removed from Fishkill to Athens. None of the witnesses have seen Jane Blauw since 1780. One of them heard of her upon Long-Island, in 1783, on her way to Nova-Scotia; and since that time she has not been heard of. Cohabitation and declarations of the parties, afford strong *prima facie* evidence of a marriage in fact; but, in the present case, the presumption is encountered by strong facts, producing very great doubt of an actual marriage. Without any apparent rupture between Van Buskirk and Jane Blauw, they separated, nearly forty years ago, without any claims or pretensions upon each other that they were husband and wife. It seems to me a jury would have been authorized to say, that their intercourse and cohabitation was meretricious. It is not necessary to the decision of this cause to place the plaintiff's rights on that ground. Jane Blauw went to Nova-Scotia in 1783, and has never been heard of since. She must be presumed to have died at the end of seven years from that period. This was so decided in the case of King & Mead v. Paddock,* from the analogy to the statutes with respect to leases dependant on lives, and the statute of bigamy, and in conformity to the cases there referred to. Still, the marriage between Van Buskirk and the lessor, if Jane Blauw was the wife of the lessor, would be

* Ante, p. 141.

UTICA,
October, 1820.

JACKSON
v.
CLAW.

void, as it took place during her life. Upon the authority of the case of *Fenton* and *Reed,* (4 *Johns. Rep.* 52.) we have a right to presume a marriage between *Van Buskirk* and the lessor, at any time subsequent to the period, when we are to presume *Jane Blauw* to be actually dead ; and this period would be 1790. In the case of *Fenton* and *Reed,* the plaintiff and *Reed* were married during the life time of her former husband, and that marriage was held to be null and void. *Guest,* the former husband, died in 1800. After his death, the plaintiff continued to cohabit with *Reed* until 1806, when he died. The Court said there existed strong circumstances, from which a marriage, subsequent to the death of *Guest,* might be presumed. The parties cohabited together, as husband and wife, from 1800 to 1806, and under the reputation and understanding that they were such, and the wife sustained a good character in society. A jury, we said, would be warranted to have inferred an actual marriage. In the present case, from 1790 to 1817, a period of twenty-seven years, there was cohabitation, the reputation of a marriage, and a good character in society. There are, therefore, much stronger grounds for the presumption of an actual marriage, after the presumed death of *Jane Blauw,* than in the case cited. (*a*)

<div align="right">Judgment for the plaintiff.</div>

(*a*) Vide *Doe* v. *Jesson,* (6 *East,* 80. 84.) per *Lord Ellenborough. Hopewell* v. *De Pinna,* (2 *Camp. N. P. Rep.* 113.) In the case of *The King* v. *the Inhabitants of Twyning,* (2 *Barn. & Ald. Rep.* 385.) *Bayley,* J. said, that the law always presumed against the commission of a crime; and, therefore, where, as in that case, a woman, whose husband had enlisted as a soldier, and went abroad, and had not been heard of since, within *twelve months* after the departure of her first husband, married a second husband, and had children by him, the second marriage was held to be *prima facie* valid ; it being presumed, that the first husband was *dead* when the second marriage took place ; and that it lay on the party objecting to the second marriage, to prove that the first husband was alive. (Vide, also, *Phillips on Evidence,* 151. 10 *East,* 216.)