## Case No. 12,050.
### ROSE v. NILES.
[Abb. Adm. 411.] 2

District Court, S. D. New York. Jan. Term, 1849.

WITNESS—COMPETENCY—WIFE OF PARTY—EXAMINATION TO DISPROVE MARRIAGE.

A female offered as a witness and objected to, upon the ground that she is the wife of the party calling her, cannot be examined to disprove the marriage when there is sufficient evidence aliunde before the court to raise a presumption of marriage.

[Cited in Kelly v. Drew, 12 Allen, 110.]

This was a libel in personam, filed by George Rose against Hiram Niles and John R. Wheeler, to recover seamen's wages. The libel demanded wages for navigating the-

1 [Reported by Hon. William Cranch, Chief Judge.]

2 [Reported by Abbott Bros.]

canal boat Emerald, owned by the respondents, from Troy to New York, and for remaining with and keeping her afterwards, upon an alleged agreement to pay libellant one dollar per day, with board, for these services. The answer denied the agreement charged, and that the services alleged were rendered. The libellant offered the deposition of one Julia Kemble, taken out of court in the cause, in support of the allegations of the libel. The respondents objected to it as incompetent, upon the ground that the witness was the wife of the libellant. To sustain the objection, they proved by several witnesses, that the proposed witness and the libellant cohabited together as man and wife, and had declared, in presence of each other, that they were married. It was also shown that the woman had on one occasion stated, in the presence of libellant, the time and place of their marriage, without contradiction from him. So also, the libellant had spoken of her to others as his wife, in her absence, but during the cohabitation. The libellant then proposed to prove, by the deposition of Julia Kemble herself, that she was not his wife. This deposition the court excluded as incompetent, and this ruling raised the principal question in the case.

A. C. Morrill, for libellant.

F. F. Marbury, for respondent.

BETTS, District Judge. In my judgment, the prima facie proof of marriage made by the respondents, renders the deposition of the supposed wife inadmissible even to disprove the marriage.

There can be no pretence that the libellant is authorized to call in the testimony of his wife in his own behalf, and the only question to be considered is, whether a woman is a competent witness for a man, to disprove a marriage in fact with him, when there is sufficient evidence aliunde to establish a legal marriage between them. As a general rule, it is well settled that proof, such as was made in this case, of cohabitation, with admissions and reputation of marriage, authorize the presumption that a legal marriage was had. Morris v. Miller, 4 Burrows, 2057; Reed v. Passer, Peake, 231; Hervey v. Hervey, 2 W. Bl. 877; Fenton v. Reed, 4 Johns. 52; Jackson v. Claw, 18 Johns. 346.

It was formerly a subject of debate in the English courts, whether a woman who had lived in a meretricious state with a man, but under representations by him that she was his wife, was not an incompetent witness for or against him in all respects as if the parties were legally married. It was contended that in ordinary cases, and especially where the relation was still subsisting at the time of the trial, the testimony of the mistress was open to nearly the same objection on the score of interest, as that of the wife, since her testimony would tend to increase or preserve the fund to which she

looked for her support. And it was also urged, with more force, that it was against public policy and morals to give to persons living together in an illicit connection, under the pretence that it was a lawful one, a power to aid each other by their testimony which was denied those cohabiting in the relation of husband and wife. And this view received some seeming sanction from a ruling of Lord Kenyon in 1782, cited in Campbell v. Twemlow, 1 Price, 81. The prisoner in that case was tried on a charge of forgery. Being a man of competent education, he addressed the court in his defence with considerable effect. In the course of his speech, he frequently alluded to a woman who then accompanied him, and whom he spoke of as his wife; and he concluded by offering her evidence in corroboration of some facts which he had stated. When the objection of her being his wife was taken, he said, that they were not in fact married. But his lordship would not permit him to call her, after having spoken of and represented her as his wife. And he was convicted and executed. In the case of Campbell v. Twemlow, 1 Price, 81, the question was much discussed but not decided. In the case of Batthews v. Galindo, 3 Car. & P. 238, 14 E. C. L. 284, Chief Justice Best ruled at nisi prius, that a woman, living with a man as his wife, was incompetent to testify for him; but a new trial was granted on this point. 4 Bing. 610, 15 E. C. L. 88. The court were unanimous in holding that the objection went to the credit of the witness only, and that the witness could not be excluded as incompetent. Chief Justice Best says: "The ground on which I think my decision at nisi prius wrong, is this, that the principles on which the rejection of testimony rests, have been greatly narrowed in late times, and are directed rather to the credit than the competency of witnesses. It is now generally agreed that the principles of our law of evidence are too narrow, and that much inconvenience is produced by a too frequent exclusion of testimony. The true principle to follow on such occasions is, that the witness is not to be excluded, unless de jure the wife of the party. Where the situation of the female may be changed in a moment, and is so different from that of a wife, who cannot be separated, it is much better that the objection should go to the credit than to the competency of the witness." And it is now regarded, I think, as settled in England, that the disqualification extends only to the case of parties united by a lawful marriage, or by a relation considered equivalent thereto.[2] 1 Phil. Ev. 48; Starkie, Ev. pt. 4, p. 711; Rosc. Cr. Ev. 147; 1 Greenl. Ev. § 339.

The same question was raised in 1820 in

---

[2] As, for example, where the parties have lived together believing themselves to be lawfully married, but the marriage is discovered to be invalid.

the oyer and terminer in New York City, before Van Ness, judge of the supreme court; Colden, mayor; and Jay, recorder; in a capital case (Randall's Case, City Hall Recorder for 1820, p. 141.) The court there held a woman an incompetent witness for the prisoner, he having cohabited with her, representing her to be his wife, although he gave evidence that they were not actually married, when by mutual agreement they commenced cohabiting together. This was undoubtedly carrying the rule to the extreme; and although decided by three most experienced and able judges, the case would probably, on revision at this day, be qualified so far as not to hold the cohabitation and admissions conclusive as to their status, except, perhaps, in respect to the civil liabilities of the man and the rights of their children. It goes greatly beyond the present case, for here no evidence is offered to disprove the marriage except that of the woman herself. The supreme court of Massachusetts would seem to countenance the doctrine declared in Randall's Case; for it held the reputed husband who offered evidence showing that a connection which he had represented to be lawful was in fact void, as being within the prohibited degrees, to be estopped from founding any advantage upon his own guilt or infamy. Divoll v. Leadbetter, 4 Pick. 220. See, also, Mace v. Cadell, Cowp. 232.

I suppose the true distinction to be, that while a party is forbidden to contradict representations of this character, in cases where third parties have acted upon such representations and cohabitation, by giving credit, or otherwise acquiring rights or incurring responsibilities (1 Greenl. Ev. § 207; 2 Greenl. Ev. § 462), such representations are not absolutely conclusive upon a mere question of the competency of one as a witness for the other, in a case in which the rights of third persons are not thus involved. I should, therefore, receive the deposition, if there were before me competent evidence that the witness was not in reality the wife of the libellant.

There is, however, a further question in the case; for the evidence on the part of the respondents amounted to primâ facie proof of a marriage de facto et de jure; and the only evidence offered by the libellant to rebut this presumption, and remove the apparent incompetency, was the testimony of the supposed wife herself. But she already stood before the court in the character of the lawful wife of libellant, and as such must be excluded from testifying for him until the disqualification is removed.

The only case I have seen which conflicts with this view is that of Allen v. Hall, 2 Nott & McC. 114, where the court declare that if the proof of marriage is only presumptive, the supposed husband and wife are competent witnesses to disprove it. As I understand that case, the presumptive proof of marriage which the court ruled was con-

clusive unless rebutted, arose from cohabitation only. But if the case is to have a broader effect, and applies to all proof short of actual marriage, it would be difficult to sustain it, or even to reconcile it with the principle declared by the court in that very case,—viz. that the parties are, by force of the presumption, proved, as respects themselves, to be man and wife. For while that relation subsists, they are incompetent to testify for each other.[3]

The fact of marriage arising in cases before courts of law must, unquestionably, be determined by a jury; and because their determination of facts is more absolute and conclusive than the decision of a court of equity, canonical or admiralty jurisdiction, being less open to revision and correction by appeal to higher tribunals, greater precaution is exercised in the admission of evidence, and its quality is more strictly scrutinized on jury trials, yet a common principle must prevail substantially with all courts in determining the legal character of evidence. And, as I understand the law of evidence, so long as a person stands in the relation of husband or wife, he or she is prohibited from testifying in behalf of the other. The dis-

---

[3] In the case of Scherpf v. Szadeczky, 1 Abb. Prac. 366, nearly the same question arose in the New York common pleas. That was an action for enticing away the plaintiff's wife. Evidence having been put in by the plaintiff, that he and the alleged wife had lived together as man and wife, were reputed to be such, and frequently admitted that they stood in that relation towards each other; the defendant afterwards offered to prove by the testimony of the alleged wife herself, that she had never been married to the plaintiff. It was contended (on the authority of Peat's Case, 2 Lewin, Cr. Cas. 288; Wakefield's Case, Id. 279; Allen v. Hall, 2 Nott & McC. 114; Stevens v. Moss, Cowp. 593; Mace v. Cadell, Id. 232; King v. Inhabitants of Bramley, 6 Term R. 330; Poultney v. Fairhaven, Brayt. 185; Com. v. Littlejohn, 15 Mass. 163; Phil. Ev. p. 88, note 163, 192; 1 Greenl. Ev. § 339,—to which might be added Wells v. Fletcher, 5 Car. & P. 12, 24 E. C. L. 429) that the evidence of marriage being merely prima facie, the witness was competent to disprove it. It was held, however, that she was properly excluded; that, there being proof of marriage already in the case when she was offered as a witness, that proof was sufficient to establish the marriage, in the absence of all proof to the contrary, so far as to render the witness incompetent.

There may seem to be an inconsistency in the principle laid down in this case and in the text, and those cases where on an indictment for forcibly abducting and marrying a woman, such female has been received as a witness. This was done in Brown's Case, 1 Vent. 243, upon the authority of Fulwood's Case, Cro. Car. 488. See, also, Rex v. Fezas, 4 Mod. 8; Bac. Abr. tit. "Marriage and Divorce," D, 1; Respublica v. Hevice, 2 Yeates, 114, where the female was admitted to prove the force used to accomplish the marriage; and also in Perry's Case (Bristol Assizes, 794), cited in Macn. Ev. 181, where the female was examined on behalf of the prisoner, to prove the marriage voluntary. The true ground of these cases appears to be, that the prosecution must be allowed ex necessitate to call the female to prove the force, and that, as a necessary consequence, she is competent to disprove it at the call of the defendant.

ability must be removed by evidence from other sources. I hold, accordingly, that the deposition of Julia Kemble, offered by the libellant, is inadmissible.

The libellant further attempted to prove the allegations of his libel by the cross-examination of witnesses offered by the respondents. In this attempt he wholly failed. The deposition upon which he relied being excluded, his claim stands before the court unsupported by evidence.

The libel must be dismissed with costs, but without prejudice to any action which the libellant may hereafter bring for the same cause.