JAMES ROCKWELL *vs.* MARY S. TUNNICLIFF, impleaded
with George Tunnicliff. ·

Proof of actual marriage is only required in prosecutions for bigamy and in
    actions for *crim. con.*

In other cases, a marriage may be proved from cohabitation, reputation, acknowl-
    edgment of the parties, reception in the family and other circumstances
    · from which a marriage may be inferred.

There are other exceptions to the general rule which allows marriage to be
    proved by evidence of cohabitation, &c.; such as actions for annulling the
    marriage contract by reason of force or fraud, adultery, &c., and for a lim-
    ited divorce; an indictment for lascivious cohabitation, between parties, one
    of whom is married, &c. ·

This general rule of evidence is not affected by the act of the legislature alter-
    ing the law as to the competency of witnesses, by allowing parties to actions
    to be witnesses in their own behalf, and thus permitting a female defendant
    to prove, by her own testimony, that she is a married woman.

In such an action the rule which requires the best evidence to be furnished, in
    preference to that which is secondary, has no application, in a sense· which
    will exclude evidence to show, by reputation and cohabitation, that the de-
    fendant is a married woman; notwithstanding she may be a witness to prove
    that fact.

APPEAL by the defendant, Mary S. Tunnicliff, from a
judgment entered on the verdict of a jury.

This action was commenced to recover the amount of
two promissory notes, one for $167.63, and one for $160.93,
dated December 3, 1860. Each of said notes was made
by G. Tunnicliff & Co., and indorsed by Mary S. Tunni- ·
cliff, the defendant. The complaint alleged that the de-
fendants, Mary S. and George, were copartners, doing
business at Penn Yan, N. Y., and composed the firm of
"G. Tunnicliff & Co.," and as such, made the said notes.
It also alleged the indorsement of the said notes · by the
said Mary S. Tunnicliff; that the same was protested, &c.
The summons and complaint was served upon Mary S.
only, and she alone defended. The answer of Mary S.
denied that she was a copartner of the defendant George
Tunnicliff, or in any way interested in the firm of G. Tun-
nicliff & Co.; and she denied the making of either of the

Rockwell *v.* Tunnicliff.

notes. She admitted the indorsing of the notes and protest thereof, but alleged as a defense, that at the time of such indorsement she was a married woman, the wife of Nelson Tunnicliff, and that she was in nowise interested in or benefited by said notes.

The cause was tried at the Oneida circuit, on the 24th day of October, 1861, before the Hon. W. F. ALLEN and a jury.

On the trial, the counsel for the plaintiff read in evidence the said notes, and the indorsement of the said defendant Mary S. on each, and rested.

The defendant Mary S. Tunnicliff, by her counsel, introduced as a witness on her part her co-defendant, George Tunnicliff, who testified : " I reside in the village of Penn Yan, and am one of the firm of G. Tunnicliff & Co.; consists of my brother John G. Tunnicliff and myself; was so December 3, 1860, and ever since. The defendant Mary S. Tunnicliff, is my mother ; she is not a member of the firm, and was not then, and never has been, and no one is interested in the firm but my brother and myself."

The counsel for the defendant Mary S. Tunnicliff, then offered to prove, by reputation and cohabitation, that she was a married woman and the wife of Nelson Tunnicliff. The counsel for the plaintiff objected to such evidence as incompetent, on the ground that the marriage in fact must be proved ; that the evidence offered was not the best evidence ; that the defendant herself was a competent witness to prove such fact, and that the same could not be proved by hearsay or reputation, or be established by proof of cohabitation. The court sustained the objection and excluded the evidence ; to which ruling and decision the counsel for the defendant duly excepted. The counsel for the defendant then called Nelson Tunnicliff, the alleged husband of the defendant Mary S., and offered to prove by him the marriage between himself and the defendant Mary S. The counsel for the plaintiff objected to the

witness as incompetent, on the ground that he being the alleged husband of the defendant, and not a party to the suit, could not be a witness for her. The court sustained the objection and excluded the witness, to which ruling and decision the defendant's counsel excepted.

The counsel for the defendant then offered to introduce the family bible in evidence, to prove such marriage by an entry of the same in the family record entered therein, made at the time of the alleged marriage by the said Nelson Tunnicliff, in his handwriting. The counsel for the plaintiff objected to the evidence as incompetent, on the ground that it was not the best evidence; that the defendant herself was a competent witness, and the marriage, if one had taken place, should be proved by her; that it was in the handwriting of Nelson Tunnicliff, the alleged husband of the defendant. The court sustained the objection and excluded the evidence, to which ruling and decision the counsel for the defendant excepted. The evidence being closed, his honor, the presiding justice, directed the jury to find a verdict in favor of the plaintiff and against the defendant Mary S. Tunnicliff, for $338.06, the amount of the two promissory notes, and the jury found a verdict accordingly. To which direction the counsel for the defendant excepted.

*J. S. Glover*, for the appellant.

I. The learned justice at the circuit erred in the exclusion of the testimony of cohabitation and reputation, offered as evidence of the marriage. Such evidence has generally been deemed competent, both in England, (*Birt v. Barlow, Doug.* 170, *and cases there cited*,) and in this State, (*Fenton v. Reed*, 4 *John.* 52. *Jackson v. Claw*, 18 *id.* 347. *Jackson v. Winne*, 7 *Wend.* 47. *Rose v. Clark*, 8 *Paige*, 574. *In the Matter of Taylor*, 9 *id.* 611. *Clayton v. Wardell*, 4 *Comst.* 230. *Cheney v. Arnold*, 15 *N. Y.* 351 *and cases there cited*.) 1. In *Birt* v. *Barlow*, above cited, (a *crim. con.*

action,) Lord Mansfield stated that it was "the only civil action where it was necessary to prove an actual marriage." 2. There seems to be a distinction, as to the degree of proof required, between criminal actions and mere civil actions. (*Morris* v. *Miller,* 4 *Burr.* 2057. 1 *East,* 470. *People* v. *Humphrey,* 7 *John.* 314, *and the cases before cited.*)

II. It is submitted that the stringent rule excluding the husband from testifying to the marriage should be relaxed, in view of the recent statute making parties competent witnesses in their own behalf.

III. The learned justice also erred in the exclusion of the proof of the entry in the family bible.

*F. Kernan,* for the respondent.

The court properly excluded the evidence of reputation and cohabitation, offered to prove that the defendant was a married woman.

I. The evidence was not sufficient or competent to prove such marriage. It was necessary to prove a marriage in fact by direct evidence. It would not have been sufficient under the law, as it was before parties could be witnesses. 1. In many cases evidence of cohabitation has been held sufficient to raise a presumption of marriage. This has been so held in cases where a husband is sued for goods furnished his wife, or for other liabilities growing out of that relation. (2 *Greenl. Ev.* § 27.) Also in cases where questions of pedigree or legitimacy are involved; and in other cases where the marriage comes collaterally in question. The presumption of law is, that every person is innocent until the contrary appears. Hence in such cases, where there was nothing to oppose or counteract this presumption, the court presumed that the cohabitation of the parties had been lawful, and that a marriage in fact had taken place. 2. But such evidence was not sufficient in cases where the marriage was directly in issue, and where it was the ground of an action or defense. In

all such cases direct evidence establishing the fact of marriage was required. This was so in actions for criminal conversation. (2 *Greenl. Ev.* § 461. *Morres* v. *Miller*, 1 *W. Black.* 632. 4 *Burr.* 2057. *Catherwood* v. *Caslon*, 13 *Mees. & W.* 261.) So in prosecutions for bigamy. (*The People* v. *Humphrey*, 7 *John.* 314. *See also, Willmett* v. *Harmer*, 8 *Carr. & P.* 695.) So in prosecutions and actions for adultery. (2 *Greenl. Ev.* § 49. *State* v. *Hodgskin*, 19 *Maine*, 155. *Commonwealth* v. *Littlejohn*, 15 *Mass.* 162.) So also in suits as to marriage. (2 *W. Black.* 877.) So also in actions for divorce. (*Ellis* v. *Ellis*, 11 *Mass.* 92. *Bishop on Marriage and Divorce*, §§ 315 *to* 325.) 3. In these cases no effect was given to the presumption of innocence, because there were other presumptions which counteracted it, and it was necessary to prove a marriage in fact. 4. So in this case under review; marriage should not be presumed from evidence of cohabitation and reputation merely. The presumption of innocence which gave weight to such evidence in some cases, does not apply in this. (*a.*) It is opposed by another presumption arising in the case. The defendant could bind herself by her indorsements, and therefore it was fair to presume, that where she indorsed the note she was legally competent to bind herself by her act, and did so bind herself, and that she did not intend to mislead or defraud the holder thereof. (*Laws of 1860, ch.* 90, *p.* 157.) (*b.*) Nothing will be presumed in her favor which may tend to relieve her of a liability, the consequences of her own act; she must prove the fact freeing her from liability by positive evidence. 5. In the case of *Birt* v. *Barlow*, (1 *Doug.* 174,) Lord Ellenborough gives as one of the reasons why he thought proof of a marriage in fact should be required in cases of *crim. con.*, that if such evidence was not required, it might be turned to bad purposes by persons giving the name and character of wife to women to whom they were not married. Now, does not the same reason requiring proof of marriage in

Rockwell *v.* Tunnicliff.

fact exist in this case? If such evidence is not required, may not any woman raise money on her notes or indorsements, and then defend herself when sued by simply proving that she cohabits with a man as his wife, when, in fact, she never was married to him? 6. It seems to us, therefore, that under the old rule, the defendant was bound to prove a marriage in fact. It was directly in issue, and was the sole defense. The defendant has alleged it to relieve herself from a liability, the consequences of her own act, and she should have established it by positive evidence. 7. The evidence was properly excluded, on the ground that it was not the best evidence; the defendant herself being a competent witness to prove the fact. (*a.*) One of the rules "which govern in the production of evidence is that which requires the best evidence of which the case in its nature is susceptible." (1 *Greenl. Ev.* § 82.) (*b.*) Starkie says, "one of the most important rules upon this subject (the quality of evidence) is that which requires that the best attainable evidence shall be adduced to prove every disputed fact." (1 *Starkie's Ev.* p. 436.) (*c.*) When it is apparent that better evidence of the fact in dispute is in the possession of the party trying to establish the fact, and such evidence is withheld, it is fair to presume that the party had some sinister motive for not producing it, and that if offered, his design would be frustrated. (1 *Greenl. Ev.* § 82. 1 *Starkie's Ev.* 437.) (*d.*) Pratt, J., in the case of *Clayton* v. *Wardell*, in speaking of actions for *crim. con.*, says: "The plaintiff, if an actual marriage exists, has it in his power generally to prove it. He knows who were present, and therefore, should be compelled to adduce the best evidence." (*Clayton* v. *Wardell*, 4 *Comst.* 240. *See also, Commonwealth* v. *Littlejohn*, 15 *Mass.* 162.) 8. The fact that proof of cohabitation, &c., has been held sufficient evidence of marriage in some cases, is no answer to the objection to its sufficiency now. (*a.*) The necessity for the rule acted upon in those cases,

no longer exists. (*b.*) When those decisions were made, the parties to the action could not be witnesses in their own behalf, and this being so, it oftentimes happened that proof of cohabitation, &c., was the best evidence of the marriage the party could give. (*c.*) In fact it would have been impossible, in some cases, when the husband or wife was a party, to give direct proof of the marriage. Marriage was a contract which could be, and frequently was, entered into between the parties without witnesses. Who, then, could prove it, in fact? (*d.*) Now, that embarrassment is removed. The parties to actions can be witnesses in their own behalf, and hence the husband and wife, when they sue or are sued, and it is necessary to prove a marriage, have it always in their power to produce positive proof of it. (*e.*) It is therefore submitted, that the defendant in this case, having set up her marriage as a defense, should have proved it by the best evidence in her power, i. e., by her own oath, or by a competent witness who was present at the marriage. The plaintiff was entitled to this, and it woud have been no hardship upon the defendant to require her to do so.

II. The court properly excluded Nelson Tunnicliff, the alleged husband of the defendant, as a witness to prove the marriage. He was not a party to the suit. At common law he was not a competent witness for his wife, and the statute has not changed the common law in this respect. (5 *Seld.* 153. *Code,* § 399.)

III. The court properly excluded the entry in the bible, of the alleged marriage on the part of the defendant, to prove such marriage. 1. It was not the best evidence, the defendant herself being a competent witness to prove the marriage, if one had taken place, and it should have been proved by her. (*See subd.* 2, *point I.*) 2. It was in the handwriting of the alleged husband, and therefore not competent. If he was not a competent witness, an entry made by him was not competent.

Rockwell *v.* Tunnicliff.

*By the Court,* Mullin, J.   The defendant set up, as a defence to the note on which the action was brought, that she was a married woman when the note was made and indorsed, and still was, and that she was in no way interested or benefited by said note, either in person or property; and denied that she was a partner of the defendant. On the trial, the defendant offered to prove, by reputation and cohabitation, that she was a married woman.  The evidence was objected to, and the objection was sustained, and the evidence was rejected.  If the fact of marriage could be proved by this species of evidence the judgment must be reversed, and a new trial ordered.

It is said in *Bishop on Marriage and Divorce,* (§ 324,) that when parties are cohabiting together as husband and wife, under the reputation of being married, the universal principle of law, that all persons are presumed innocent until the contrary is shown, comes in and says they shall be *prima facie* considered to be married, and not to be living in an unlawful intercourse.  Therefore, because intercourse is presumed, proof of cohabitation and repute is sufficient evidence of marriage, except when the proof of marriage involves the proof of an offense, either in one of the parties or in some third person.

It is said in *Birt* v. *Barlow,* (1 *Doug.* 160,) that an action for criminal conversation is the only civil case where it is necessary to prove an actual marriage.  In other cases cohabitation, reputation, &c., are equally sufficient.  In *Morris* v. *Miller,* (4 *Burr.* 2057,) it was held that reputation, declarations of parties, &c., are admissible to prove marriage except *crim. con.* and bigamy.  It was held in *Fenton* v. *Reed,* (4 *John.* 52,) that proof of actual marriage is only required in prosecutions for bigamy, and in actions for *crim. con.*  A marriage may be proved in other cases from cohabitation, reputation, acknowledgment of the parties, reception in the family, and other circumstances from which a marriage may be inferred.  In *Jackson* v.

*Clow*, (18 *John*. 346,) the court says, cohabitation and declarations of the parties afford strong *prima facie* evidence of a marriage in fact. The chancellor, in 8 *Paige*, 571, says: "That an actual marriage may be inferred in ordinary cases from cohabitation, acknowledgment of parties, &c., as well as by positive proof of the fact, there can be no room to doubt." In *The Matter of Taylor*, (9 *Paige*, 611,) the chancellor says, that declarations, &c., to be evidence, must be parts of the *res gestæ*. In *Clayton* v. *Wardell*, (4 *N. Y.* 230,) it is said the agreement (of marriage) may, like any other fact, be proved either by direct or circumstantial evidence. In the same case it is said, reputation, &c., is not competent in a case of bigamy; marriage in fact must be proved by direct evidence. But when bigamy comes in collaterally, as in proceedings for a legacy, it is competent.

It will be perceived by the cases cited, that actions for *crim. con.* and indictments for bigamy, are exceptions to the general rule which allows marriage to be proved by evidence of cohabitation, &c. But there are other exceptions not referred to in the cases from the English reports above cited, such as actions for annulling the marriage contract by reason of force or fraud, adultery, &c., and for a limited divorce. (*Bishop on Marriage and Divorce*, § 315, *et seq.*)

The case of *The Commonwealth* v. *Littlejohn*, (15 *Mass.* 162,) is another exception within the principle laid down by *Bishop*, (*cited supra*,) "*as it involves the proof of an offense in one of the parties.*" The defendants in that case were indicted for lascivious cohabitation, one of them being married. It was held, the presumption of intercourse could only be overcome by direct proof of the marriage.

The counsel for the defense concedes that the rule is as I have stated it, but insists that when the rule was established neither husband nor wife could be parties, and inas-

much as they are now competent, and as the law requires the best evidence the nature of the case will admit of to be given, the defendant should have been called in this case to prove an actual marriage, instead of resorting to the inferior and less satisfactory evidence of cohabitation and reputation. When the rule was established which permitted the proof of marriage by reputation, &c., it is true, neither husband nor wife could be witnesses for or against each other. But the rule which admitted the inferior evidence was not limited to cases in which the husband and wife were parties. It extended to all cases in which the question of marriage was in issue. In actions of ejectment, and to recover legacies, the fact of marriage might be in issue between parties as between whom both husband and wife were competent witnesses, and yet I apprehend it was never held that the evidence by reputation, &c., was incompetent, and the husband or wife required to be produced to prove the marriage. In *Doe* v. *Flemming*, (4 *Bing.* 266,) the plaintiff claimed to recover the premises as heir at law to his brother the person last seised. His father was still alive, and the only evidence of the lessor of the plaintiff having been born in lawful wedlock was the reputation of his parents having lived together as husband and wife. There was a verdict for the plaintiff, and a new trial was moved for, on the ground that though reputation was evidence of marriage in ordinary cases, yet when the plaintiff was to recover as heir at law, when his being such was the sole question to be tried and his father was still alive, direct evidence of the marriage ought to have been furnished. Park, J., said: "The general rule is, that reputation is sufficient evidence of marriage, and a party who seeks to impugn a principle so well established, ought at least to furnish cases in support of his position. As we have heard none, I see no reason for disturbing the verdict." Best, Ch. J., said: "The rule has never been doubted. It appeared on the trial that the mother of the

lessor of the plaintiff was received into society as a respectable woman, and under such circumstances improper conduct ought not to be presumed." And the rule was refused.

I apprehend that the rule which requires the best evidence to be furnished has no application to the case in the sense in which it is sought to be applied. The best or highest evidence is required in preference to that which is secondary, such as documentary to parol evidence; that of a subscribing witness to proof of his handwriting. But there is no authority for rejecting circumstantial evidence of a fact because it appears that persons are living who saw or were personally cognizant of it. (1 *Greenl. on Ev.* § 82.) In proving or disproving handwriting, it is not essential to call the witness, but evidence of others who are familiar with it may be received. (*See also* 2 *Cowen & Hill's Notes,* 541.) The rule is very well illustrated in the case of *The Commonwealth* v. *James,* (1 *Pick.* 375.) There the defendant was arrested for stealing a quantity of barilla, and it was shown that it was sent by a truckman to his mill, and after being ground was returned by the same man. The larceny consisted in taking out a portion of the barilla and substituting plaster of paris. Evidence to show the adulteration was given, but it was insisted that the people should call the truckman, as being the highest evidence. But it was held that it was not necessary to call him; the fact could be proved by others. In cases where the circumstantial evidence is slight and inconclusive, and it appears that there is better evidence within the reach of the party, it is not unusual for the court to reject the inferior and to require the production of the superior evidence. But it seems to me that when the evidence offered is so weak and inconclusive as that the court would be justified in refusing to submit it to the jury, the fact that better evidence was shown to exist would not change the obligation.

The duty of the court would be to reject it whether other evidence existed or not.

The plaintiff's counsel further urges that as the defendant insists upon her marriage as a protection against the performance of what otherwise would be a legal duty, she should furnish the best evidence in her power of the fact. She was required to prove her marriage by legal evidence— no more, no less. This she was bound to prove when under the former system she pleaded her coverture in abatement, or when it was otherwise admissible as a defense. In *Leader* v. *Barry,* (1 *Esp. N. P.* 353,) the defendant pleaded coverture, and issue was taken upon it. At the trial the marriage was proved by reputation, cohabitation and the recognition of the defendant as the wife of her alleged husband by both his and her friends. Lord Kenyon held the evidence competent, laying down the rule which I have already referred to, that it is only in *crim. con.* and bigamy that direct proof of marriage must be given ; in all other cases it may be shown by reputation, &c. (*Kay* v. *Duchess de Pienne,* 3 *Campb.* 123. *Read* v. *Passer,* 1 *Esp. N. P.* 213.) In *Rex* v. *James and Sarah Hassall,* (12 *Eng. Com. L.* 207,) the defendants were indicted for larceny, Sarah as a single woman. She set up her marriage by way of defense, and it was held the marriage might be proved by cohabitation, &c. (See note to same case, page 661, and note on page 78 of same volume.)

It is urged that inasmuch as the wife was admissible in this case she ought to have been produced. This is on the idea that the legislature, in altering the law as to the competency of witnesses, has changed the rules of evidence, so as to exclude evidence once receivable, because a witness once incompetent, and who is better acquainted with the facts, is now competent. I know of no authority for any such proposition ; nor do I believe there is any principle on which to sustain it. The admissions of parties were always receivable. Should they be excluded now

because they may be used as witnesses? Shall we reject the opinion of an expert as to handwriting because the writer himself is competent.

I entertain no doubt but that the marriage might be proved by the evidence offered at the trial. It was therefore improperly rejected, and the judgment must be reversed and a new trial ordered; costs to abide the event.

New trial granted.

[OSWEGO GENERAL TERM, July 8, 1862. *Mullin, Morgan* and *Bacon,* Justices.]