## ROCKWOOD vs. WOODFORD.

*Power of electors at town meetings.*

The electors of a town, at their annual town meeting, may empower a committee of their own number (not the town supervisors) to examine, and, at their discretion, either repair or rebuild a bridge; and, without voting any definite sum, may direct the expense of such improvement (after being audited and allowed by the supervisors) to be assessed and collected with the next annual town tax.

APPEAL from the Circuit Court for *Dodge* County.

At the annual town meeting of the town of Hubbard, in said county, held in April, 1867, a committee of seven freeholders of the town was appointed, who were directed "to examine Lake street bridge [in said town], repair the same or build a new bridge, as they may [might] think best; the costs and charges of such repairs, or such rebuilding, to be assessed upon the taxable property of the town in the next tax roll, and collected as provided by law." The committee caused a new bridge to be built, and the same to be paid for in town orders, issued from time to time, as the work progressed, upon their certificates, signed by the chairman of the town board, and countersigned by the clerk. During the subsequent fall, the account of the committee for the building of the bridge was allowed by the supervisors of the town; and in December following, the town clerk delivered to the town treasurer the annual assessment roll, with a warrant for the collection of the taxes, including in the "town tax" about $7,000 for the building of said bridge. The plaintiff having

refused to pay his town tax, on the ground that the same was illegal, by reason of the insertion of the amount above named, the treasurer levied upon and sold his chattels to raise the amount. The defendant was chairman of the board of town supervisors, and it is claimed that said levy and sale was made by his authority and direction; and this action was brought against him to recover the value of said chattels. The court found in plaintiff's favor, and rendered judgment against the defendant; from which he appealed.

*Rising & Hays* (with *L. T. Fribert* of counsel), for appellant, in support of the legality of the tax, cited R. S. ch. 15, §§ 23, 80, 84; *Mills v. Gleason*, 11 Wis. 470: *Clark v. Janesville*, 13 id. 414; *Warden v. Supervisors*, 14 id. 618; *Smith v. Smith*, 19 id. 615; *Kelley v. Corson*, 8 id. 182; 11 id. 1; *Mills v. Johnson*, 17 id. 598.

*E. P. Smith* and *A. Scott Sloan*, for respondent, contended, among other things, that the resolution passed at the town meeting was void: 1. Because it took from the supervisors of the town the care and control of the bridge (R. S. ch. 19, § 1), and delegated to an irresponsible committee the power expressly given by statute; and such power cannot be delegated. *Benjamin v. Hull*, 17 Wend. 437. 2. Because it fixed no sum to be raised. *Robinson v. Dodge*, 18 Johns. 351; R. S. ch. 15, §§ 2, 80, and ch. 19, § 3, subd. 4.

COLE, J. The controversy in this case grows out of the alleged invalidity of the tax inserted in the tax roll to raise money to pay the expenses of building the Lake street bridge. It is claimed, on the part of the respondent, that this portion of the town tax at least was entirely void. And first, it is said that the resolution adopted by the electors at the annual town meeting in April, 1867, was invalid for all purposes. By this resolution, a committee of seven freeholders of the town was chosen,

whose duty it was to examine Lake street bridge, and repair the same or build a new bridge as they might think best, the cost and charges of such repairs, or such rebuilding, to be assessed upon the taxable property of the town in the next tax, and to be collected as provided by law. Now the first objection taken to this resolution is, that it attempted to take from the supervisors of the town, who, by virtue of their office, are made the commissioners of highways for their respective towns, and are empowered to give directions for the repairing of the roads and bridges therein, the powers conferred upon them by statute, and to delegate these powers to an irresponsible committee.

Our statute confers upon the qualified electors of each town, at any legal meeting thereof, power "to vote to raise money" for the repair and building of roads and bridges (sec. 2, chap. 15, R. S.); and also the power "to make all contracts that may be necessary and convenient for the exercise of its corporate powers." Sec. 1. Under this general authority conferred upon the qualified electors at a legal town meeting, we suppose the electors might themselves, had it been practicable, have examined the bridge in question; have determined whether they would repair or rebuild it; have given the necessary directions for doing the work, and voted a tax to raise the money to meet the expense incurred. But such a course was manifestly impracticable. A committee was therefore selected, whose duty it was to examine the bridge, and repair or rebuild the same as they might think best. The only act of discretion which the committee had to perform was, to determine whether it was better for the town to rebuild or repair. This was the only discretionary power committed to them. They were to do the work, or see that it was done, for the town. It was the duty of the town to keep its bridges in proper repair. Could not the town avail itself of the skill and experience of its own freeholders

and citizens in discharging this duty? The case shows that the work was somewhat expensive, and the qualified electors doubtless considered it best for the interest of the town to employ certain persons to perform the work, only leaving them the discretion of determining, upon examining the bridge, whether it was advisable to rebuild it or repair it. We do not think that this was an unlawful delegation of authority to the committee by the electors, or an unwarranted attempt to exercise powers not conferred upon such electors by the statute. Ordinarily, and from the necessity of the case, the supervisors will have the care of the roads and bridges in their respective towns, and will give directions for repairing the same when out of order, on account of the utter inability of the electors to give any specific directions at their town meetings. But the repair or rebuilding of Lake street bridge seems to have been a matter of sufficient importance to induce the electors themselves to take steps to have the work performed. We think it was competent for them to take the action they did in the matter.

Another objection taken to the validity of the resolution is, that it fixed no sum to be raised for the work. We do not suppose it was necessary to vote a definite sum. It was, of course, impossible in advance to tell what would be the expense of repairing or rebuilding the bridge. The electors, therefore, voted that the charges for the repairs or the rebuilding of the bridge should be assessed upon the taxable property of the town in the next roll. It is very apparent that this was all they could do under the circumstances, or else incur a debt for the work, or vote to raise a sum large enough to meet any possible expense of doing the work. To run in debt for making the repairs might justly have been deemed by the electors bad policy for their town; while to vote enough to meet every possible expenditure might raise a greater sum than was really needed.

We therefore think no specific sum was essential to the validity of the resolution. When the charges for doing the work were audited and allowed by the town board, the amount necessary to be raised by taxation would be ascertained. In the case of *Robinson v. Dodge*, 18 Johns. 350, to which we were referred by the counsel for the respondent, the court held that the statute required the inhabitants and freeholders of the school district, at their meeting, to vote a precise and definite sum as a tax for building a school-house. But we are not referred to any analogous provision of our statute, which requires the electors, at their annual town meeting, to name the precise amount which they vote to raise for the repair and building of roads and bridges. And when they voted to raise the "costs and charges" of repairing or rebuilding a particular bridge, they indicated the amount of tax to be collected as clearly and precisely as the nature of the case permitted.

This tax for building the Lake street bridge being valid, it follows that the circuit court erred in rendering judgment for the plaintiff.

*By the Court.*—The judgment is reversed, and the cause remanded, with directions to render judgment for the defendant.