Smith, P. J.
The action was brought to foreclose a mortgage executed by Dolphin Harrison and Lydia A. Harrison, stated therein to be his wife, dated March 11, 1861. The contest in respect to the surplus money depends upon the question whether the said Lydia was the lawful wife of Harrison. On the hearing before the referee it was conceded by the parties who disputed the existence of such relation, that from about the year 1833, to about November, 1863, the said Dolphin and Lydia lived and cohabited together, and held themselves out to the *131 community in which they lived as man and wife continuously during that period; that they were generally reputed amongst the community in which they lived to be man and wife; that she bore the name of Lydia A. Harrison and that as a result of their cohabitation during such period, five children were born to them, whom said Harrison acknowledged as his children, and who bore his name, and who, or their lineal descendants claim to be heirs of the said Dolphin Harrison deceased. But in said concession it was expressly stated that it was not conceded that the intercourse of said Dolphin and Lydia was that of lawful husband and wife. Among the appellants herein are children and grandchildren of said Dolphin and Lydia.
The facts, thus admitted, were sufficient of themselves to raise the presumption of marriage, even although the fact appeared as it did by the testimony of Lydia, that there was no ceremonial marriage. A present agreement between parties competent to take each other for husband and wife, is enough in this state, to constitute a valid contract of marriage, and such an agreement may well be presumed from the facts above stated, if there is nothing in the case to repel such presumption-.
It has been said that the presumption of marriage from cohabitation, apparently matrimonial, is one of the strongest presumptions known to the law; especially in a case involving legitimacy; and the presumption can be repelled only by the most cogent and satisfactory evidence. Hynes v. McDermott (91 N. Y., 451), per Andrews J., 459, and cases there cited.
The countervailing evidence in this case, we think meets the requirements of that rule. In 1863, Harrison and Lydia voluntarily separated and ceased to live together. In July 1864, Harrison married the respondent, Laura A. Harrison, and in July, 1865, Harrison being then living, Lydia married John H. Southworth. Each of these marriages was ceremonial, and if Lydia was the lawful wife of Harrison, each of such marriages was bigamous. But the law presumes against the commission of crime, and that presumption stands opposed in this case to the presumption against illicit intercourse, and neutralizes it. As was said by Gilbert, J., in Foster v. Hawley (8 Hun, 68, 72), “ We can not raise a presumption of a contract of marriage when the direct consequence of so doing, would involve both parties to it in the crime of bigamy.” See also, Jackson v. Claw, 18 Johns., 346; Clayton v. Wardell, 4 N. Y., 230; Chamberlain v. Chamberlain, 71 id., 423.
One of the children bom to Harrison and Lydia during the period of their cohabitation was a son, named Elijah, who died unmarried, and in -February, 1878, Lydia applied *132 to the surrogate for letters of administration on his estate, and presented a petition, duly verified by her, in which she alleged, that the said Elijah was one of her children by said Harrison, and was her illegitimate child. Harrison appeared before the surrogate, in person and by counsel, pending that application, but did not file any objections, and abandoned all opposition, and letters were granted to Lydia. This statement in her petition, made by her deliberately, under oath, in a legal proceeding in which her legal right depended on the fact of illegitimacy, repels the presumption of a marriage prior to the birth of such child, and there is no evidence or claim that the nature of the cohabitation was changed subsequently. The presumption against the commission of crime here arises again, for if the connection between Lydia and Harrison was matrimonial in its inception, she was guilty of perjury.
In October, 1863, soon after the parties separated, Harrison commenced an action against Lydia, and she employed counsel to defend it.. Counsel had conversation with both parties and was told that they had never been married. He advised that there was no ground for the action, and that each of them had the right to marry. Thereupon the suit was' discontinued on stipulation signed by the attorneys of both parties. The appellants contend that it appears from the testimony that the advice of the counsel was based upon the information communicated to him by the parties that there had been no marriage ceremony; and it is further contended that the parties relying on such advice acted in good faith in subsequently marrying, and their conduct does not tend to repel the presumption of marriage arising from their cohabitation and its attending circumstances. This contention is hardly warranted by the testimony of the counsel, who was the present Judge Hammond, the county judge of Erie county. Judge Hammond stated in the latter part of his testimony that the fact that there had been no marriage ceremony was “one of the facts” that led to the understanding or opinion that the parties “were not legally married.” He had previously testified that Harrison had told him “in substance that they were never married.” “My impression is,” said Judge Hammond, “he told me they went off: on a canal boat together, and went tó living together.” * * * “Know there was something about a canal boat and their living together, and that they were never married. ” He also testified that the statements of Harrison and his client on the subject were substantially in accord. These statements excluded the theory not only of a marriage ceremony, but also of an agreement of marriage. And those statements we are to assume the witness had in mind when he testified that the *133 lack of a marriage ceremony was “one of the facts” upon which his opinion was formed, and when he advised his chent, as he testified, that “there was no legal marriage,” and that “an action for divorce could not be maintained, as no marriage could be proven.” The facts stated to him repelled the presumption of marriage, and in view of them, no marriage could be proven.
Judge Hammond was asked: “Was there any conflict in the statements made by Mr. Harrison in the course of your conversation with him, and the statements made by the defendant in that action about the same thing % It was objected “that answering the «question depended somewhat upon confidential communications between witness and his chent.” The witness answered that, according to his recollection, “there was no substantial difference.”
The appellant’s counsel contends that the exception points to error. It does not distinctly appear from the appeal book which party took the exception. From the fact that the next preceding witness was called by Mr. Plumley and that Mr. Plumley introduced an item of evidence immediately after Judge Hammond’s testimony was concluded, it may be inferred, perhaps, that Judge Hammond was called by Mr. Plumley, and the question which was objected to was put on his direct examination. Assuming that to be the case, we do not think the overruling of the objection was error. No answer of which the question was properly susceptible would disclose a confidential communication. The question did not call for any statement made by the client, and when the question was asked there was no proof of any statement made by Harrison. The proper time to interpose the objection, if it had any force, was when the statement of Harrison was called for, on the ground that taken in connection with the answer previously elicited, such statement would amount to a disclosure of communications made by the chent. But the question asking for that statement was not objected to.
We find no other exception in the case requiring comments.
The order should be affirmed, with ten dollars costs and disbursements.
Barker, Haight and Bradley, JJ., concur.
So ordered.